## HOPKINS v. DALFERES.
### No. 1288.

Court of Appeal of Louisiana. First Circuit.
March 6, 1934.

A. W. Dalferes, of Lafayette, for appellant.

Mouton & Davidson, of Lafayette, for appellee.

ELLIOTT, Judge.

Frank K. Hopkins claims $125 of Maximilian D. Dalferes as a quantum meruit for work done in abstracting certain tax titles.

Dalferes denies owing anything; denies that he authorized plaintiff to do the work on account of which payment is claimed; and prays that his demand be rejected.

There was judgment in favor of the plaintiff as prayed for.

Defendant has appealed.

The issue between the parties as to whether or not Dalferes authorized Hopkins to do the work presents a serious question. The abstract work done has been brought up and has received our consideration in connection with the evidence concerning the alleged employment. There is contention on the part of defendant that plaintiff was not employed to do any work; that plaintiff merely saw proper to do the work done and claims to have performed a service for defendant, which benefits him; and that his claim is on that account. Plaintiff claims that he did the work pursuant to a contract entered into as provided under Civ. Code, art. 1761. Defendant contends that plaintiff's claim is under the provisions of Civil Code, art. 2293.

The petition of the plaintiff and the evidence in support thereof asserts that the work was done under a contract between the plaintiff and defendant, in which there was no price fixed to be paid for the service rendered.

There were two conferences between the plaintiff and defendant concerning the abstract work in question. At the first meeting, defendant stipulated, as a condition to the doing of the work, that plaintiff first acquaint him with the amount it would cost, and defendant reserved the right, after hearing what it would cost, to have the work done or not, as he saw proper. Plaintiff admits that such was defendant's first position in the matter.

At the second meeting, however, soon afterwards, he contends that defendant authorized him to go ahead and do the work; but there was no stipulation as to the price.

There is sharp conflict between the testimony of the defendant and plaintiff on this subject. We excerpt from plaintiff's testimony concerning the matter as follows:

"When this work was first given me by defendant, Maxim Dalferes, son of the defendant, was present and informed me that he had made an abstract of the properties. I then remarked to him and the defendant, that that being the case they would need no service from me. Mr. Dalferes, defendant, stated that he wanted me to go ahead with the work; that he was told that I was pretty good at that kind of work. And it was then agreed between the three of us that Mr. Maxim Dalferes would bring the work that he had performed to my office and we would go over it together, with a view of it assisting me in the work. He did bring the work to my office and consulted and discussed with me the work to be done. And he came very often to my office during the time that the work was being done and ascertain what progress was being made, and informed me

that he would tell his father how the work was progressing."

Defendant's version of what took place at the second meeting may be gathered from the following excerpt from his testimony:

"Q. There was positively nothing said or done at the second meeting that changed your position taken at the first meeting? A. No, except that I repeated the same thing about the cost and I wanted to know how much it was going to cost.

"Q. And the first time you knew what Mr. Hopkins intended to charge was when he brought the bill? A. When he brought me the bill."

The plaintiff testified at length, answering questions propounded to him by his own counsel and that of the defendant about the alleged employment. He said more than once that defendant told him he wanted him to do the work, giving him some tax receipts concerning the property to take to his office, and told his son Maxim Dalferes, to also give him an abstract which he, Maxim Dalferes, had made of the properties, and that pursuant to this employment he went to work and made the abstract, on account of which he had brought the suit; that during the work Maxim Dalferes, defendant's son, often called at his office and discussed the tax titles with him and stated that he would keep his father posted as to the progress of the work. That when he finished the work he brought the abstract to defendant at his store, his bill for $125 was pinned to the first page. Defendant and himself went over the abstract together and he explained to defendant each item of the work done. After they had gone over it, defendant looked at the bill and said, "I will not pay that."

Defendant also testified at length in response to questions asked him by his own counsel and that of the plaintiff concerning the result of the second conference, and he unqualifiedly denied that he authorized plaintiff to do the work. He says that he told plaintiff to take the papers, tax receipts that he had and an abstract that his son Maxim had, and, after looking at them, to let him know what defendant would charge to make an abstract, and to not do any work until he had informed him as to the cost, that he would then let him know whether to do the work or not. That when plaintiff brought him the work he noticed the bill first, and stated to him there and then that he had instructed him to first let him know what the cost would be and he would then let him know whether he wanted the work done or

not, and declined to pay the bill on that account.

The testimony of the defendant indicates that he regarded the bill as unreasonably excessive.

We infer from the fact hat the minutes and note of testimony say nothing about a severance, that the plaintiff and defendant and their witnesses all testified in the presence of each other. And in this connection we notice a difference in the testimony of the defendant, Dalferes, and two witnesses called by him.

Defendant says, speaking of the time when plaintiff called at the store with the abstract and bill attached:

"Q. Did you remind Mr. Hopkins when he presented this bill that you had asked him to give you the price before he began any work? A. Yes.

"Q. What did he say? A. I don't think he said anything.

"Q. That you remember? A. No. He did not say anything. He asked me how much I would give. I told Mr. Hopkins I would not make him any offer because his price was far too great. But I said, if you had asked me $10.00 I would have hesitated before giving it to you."

Clay Dalferes, one of defendant's sons, in the store and who claims to have heard what took place between his father and the plaintiff, gives this version of what his father said to the plaintiff:

"Didn't I tell you to please let me know how much it would cost before you did any work?" And Mr. Hopkins said, "Yes."

Whitney Broussard, one of defendant's clerks employed in his store, was also nearby and heard the conversation between the plaintiff and defendant at the time in question, testified almost in the same language as Clay Dalferes. He says that defendant said to plaintiff, "Didn't I tell you to please let me know how much it would cost before you did any work?" That Mr. Hopkins said, "Yes."

There is a fact and circumstance which tends to corroborate the version of the plaintiff that the defendant authorized him to do the work. Plaintiff and defendant both testify that Maxim Dalferes, defendant's son, was present at the second meeting and participated in the conversation, telling plaintiff that he had an abstract he had made concerning these tax titles, and that defendant requested him to deliver it to the plaintiff in order that the plaintiff might get assistance

from it in doing the work. Plaintiff testified that while he was engaged in doing the work, Maxim, defendant's son, often called at his office and discussed the tax titles with him and stated that he would keep his father posted as to the progress of the work.

The evidence shows that Maxim Dalferes was present in the courtroom while the testimony was being taken.

 We are justified in taking the position that defendant understood the importance of refuting the testimony of Hopkins, which we have quoted, by a party present at the conference and said to have seen the work going on and to have promised to report its progress to defendant, his father. If this testimony by plaintiff had been untrue, Maxim Delferes would have been called to the stand to support the testimony of the defendant. Maxim Dalferes was not called to the stand and was not made a witness in the case. This failure creates a presumption that Maxim Dalferes would not support by his testimony the contentions of his father on the subject, but would support instead the claims of the plaintiff. The authorities on this question are numerous and elementary: Crescent City Ice Co. v. Ermann, 36 La. Ann. 841; Rubenstein v. Files, 146 La. 728, 84 So. 33; Toca v. Rojas, 152 La. 319, 93 So. 108. 9 La. Digest (1930 Supplement) Evidence, § 42, contains a number of cases bearing on presumptions of this kind. Jones on Evidence, subject, Presumption, § 19 et seq.

We conclude that the lower court made no mistake in holding that the plaintiff was authorized to make an abstract, as was done, and the work being of a kind which contemplated payment, a reasonable sum should be allowed. Civil Code, art. 21 provides: "* * * To decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent."

Further provisions on the subject are contained in the Civil Code, arts. 1964, 1965. In this case we have considered the abstract made by the plaintiff and also the work done by Maxim Dalferes. The abstract made by the plaintiff does not go back further than two or three years, just far enough to show the recorded owner of the land at the time the property was assessed for the year it was sold for taxes.

The work which plaintiff did was to some extent original, yet it is in the main a verification of what had been found and reported by Maxim Dalferes. The plaintiff is entitled to a fair compensation for the work done.

We have considered the matter and have concluded that $75 is fair compensation.

For these reasons the judgment appealed from is reduced from $125 to $75, and, as thus amended, the judgment appealed from is affirmed.

Defendant to pay the cost in the lower court. Plaintiff the cost of appeal.

MOUTON, J., not participating.