NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, a Corporation, Appellee, v. RAY MURPHY, Commissioner of Insurance, et al., Appellants.

No. 43711.

MARCH 9, 1937.

334

Stipp, Perry, Bannister & Starzinger, and Henry & Henry, for appellee.

Edward L. O'Connor, Attorney General, and Lehan T. Ryan, Asst. Attorney General, for appellants.

RICHARDS, C. J.—There is presented on this appeal a controversy as to the extent of the liability of plaintiff insurance company for taxes for the year 1934. During that year numerous residents of Iowa paid to plaintiff varying amounts in consideration of receiving plaintiff's written undertakings to pay annually to such persons, respectively, while living, an agreed sum of money. The aggregate amount so paid to plaintiff was $209,362.62. During 1934 plaintiff also realized a further sum of $3,828,770.08, which was due plaintiff upon contracts that both parties concede were life insurance policies. Upon this larger amount plaintiff admits, and has satisfied, its tax liability. The specific question is whether the item of $209,362.62 derived as above indicated, should have been included in computation of the tax for 1934 imposed by section 7022, Code 1931, the material portions of which are the following:

"7022. Foreign companies—tax on gross premiums. Every insurance company incorporated under the laws of any state of the United States other than the State of Iowa * * * shall, at the time of making the annual statements as required by law, pay into the state treasury as taxes two and one-half per cent of the gross amount of premiums received by it for business done in this state, including all insurance upon property situated in this state and upon the lives of persons resident in this state during the preceding year."

At all times that are material plaintiff was incorporated under the laws of Wisconsin with power granted in its articles of incorporation to make and offer insurance pertaining to or connected with life risk, and to grant and purchase annuities. Plaintiff admits it is amenable to the provisions of section 7022, but contends that there is nothing in this statute to justify defendants' demand for payment of the tax upon the item of

$209,362.62. Plaintiff denominates the contracts from which the $209,362.62 was derived as contracts for annuities, and says they are to be distinguished from contracts for life insurance. So distinguishing, plaintiff's claim is that section 7022 exhibits a legislative intent that there be taxed only premiums received from the business of *insurance,* and that consequently revenues received as considerations for annuity contracts are not taxable. The contrary contention of defendants is that the legislative intent was to tax the gross amount of all premiums received by plaintiff for business done in this state and that the making of annuity contracts was a part of the business done in this state and that the amounts received in consideration for such contracts were premiums within the intendment of section 7022.

The contracts for which the $209,362.62 was paid to plaintiff were quite simple in their terms, plaintiff undertaking in each such contract to pay to the other party to the contract an agreed sum annually during the then remaining lifetime of such other party, the latter paying at the time of the execution of the contract an agreed amount as the full consideration for plaintiff's such undertaking. There were but two parties to each of these contracts, no third party being named as entitled to any recovery in event of a cessation of a human life. We are not here confronted with a form of contract in which the terms may appear to contemplate both life insurance and provisions for annuities. We think it is obvious, without discussion, that it should be conceded to plaintiff that these contracts, from which the $209,362.62 was derived, lacked some of the essentials of, and in other respects differed from, life insurance contracts in the ordinary usage of those words, and were in fact undertakings for the payment of annuities, and were not life insurance contracts. See Hult v. Home Life Ins. Co., 213 Iowa 890, 240 N. W. 218.

Such concession opens the way to plaintiff's next proposition. It is based on the premise that the word "premiums" in this statute has such a definite and restricted meaning that the word is applicable solely to considerations paid for contracts of insurance. Therefrom plaintiff concludes that, because the word "premiums" is used, there is no intention expressed in the statute that considerations realized from annuity contracts be taxed. To establish such premise plaintiff cites several cases in which it is said in substance that the definition of the word "premium"

as used in the law and business of insurance is the consideration paid for a contract of insurance. Plaintiff relies on this definition. But a mere definition is not always a safe foundation for correct conclusions. One reason is that, except in mathematics, it is difficult to frame *exhaustive* definitions of words. Local Bd. v. Lee, 1 Ex. D. 336, loc. cit. 343. Consequently, unless the authority offering the definition has undertaken the difficult task of framing a definition that is exhaustive, and has succeeded in such undertaking, error may result if there be reliance upon the element of exhaustiveness. Plaintiff's point depends on acceptance of these definitions as being exhaustive. But such they were not in our opinion. To illustrate, among cases cited are State v. Pittsburgh C. C. & L. Ry. Co., 68 Ohio St. 9, 67 N. E. 93, 64 L. R. A. 405, 96 Am. St. Rep. 635, and Northwestern Life Assn. v. Stout, 32 Ill. App. 31, which are cited by plaintiff because in each case the definition, in substance, is found. But in neither case does there appear any reason that the court should have attempted an exhaustive definition. On the contrary, the issue was whether an insurance business was being conducted. Upon that issue there was discussion of the fact that premiums are considerations for insurance contracts and if shown are material on the question whether an insurance business is being carried on. Such was the subject matter being considered in these authorities at the time of the pronouncements. Definitions differ in their character according to the nature of the thing defined. Warner v. Beers, 23 Wend. (N. Y.) 103, loc. cit. 142. Looking upon these definitions as having been pronounced primarily for application to the issues and facts these courts had in hand, we are unable to agree with plaintiff that these courts intended to go any further, or to consider a question not in issue, that is whether the word "premium" may not in fact also be applied to contracts other than those for insurance. We think the definitions in the two above cases were intended to be used in pointing out the obvious, that is, that amounts paid for life insurance are premiums.

But if we could be in accord with plaintiff that the definitions from other jurisdictions were undertakings to frame *exhaustive* definitions, nevertheless there is still the question, in view of the conceded facts before us, whether we can agree that such courts successfully did so. This is because it is the record in this case that the word "premium" is in fact used in a more

general sense than that urged by plaintiff. The forms of the annuity contracts issued by plaintiff, the contracts that are the subject of this controversy, are in evidence. In all of these contracts is found the recital of the parties that "in consideration of the payment of a single *premium* of (the agreed amount) the receipt of which is hereby acknowledged, the Northwestern Mutual Life Insurance Company promises to pay * * * a life annuity * * *." (Italics ours.) In argument plaintiff frankly admits that it does so use the word "premium" in its annuity contracts. Plaintiff further concedes that "most other companies" do likewise. From this record it is our opinion that in interpreting the words chosen by the legislature for use in this statute, it would be hardly within reason to hold that there was an impossibility that the legislature could adopt and intend to use the word "premiums" in the same manner in which it was concededly and commonly used by the insurance companies themselves upon whom the tax is imposed. It might well be that in taxing insurance companies the legislature sought to talk their language. To hold that the alleged definition is in fact exhaustive of the uses of the word "premium" would be arbitrary and inconsistent with the facts in this case. We are unable to adopt plaintiff's premise that the word "premium" is necessarily inapplicable to annuity contracts.

There remains the query whether the legislature actually did intend to use the word "premiums" in the broader sense. Plaintiff, urging that the answer should be in the negative, quotes and italicizes a phrase found in section 7022 in the following manner: "including all *insurance* upon *property* situated in this state and upon the *lives* of persons resident in this state during the preceding year." The italicizing by plaintiff is to make clear its contention that this statute defines the legislative intent to tax only premiums received from the business of *insurance*. This intent, says plaintiff, is indicated by the fact that the quoted phrase refers specifically to all *insurance* and thus shows that it was the intention of the legislature in enacting the statute to tax premiums received for the business of insurance. In other words, plaintiff's thought seems to be that because insurance alone was mentioned in the quoted phrase it is fair to assume that only insurance was in the legislative mind when the statute was enacted. The judging of the soundness of the proposition requires careful reading of the quoted phrase on

which the proposition is founded. Such reading leaves no doubt concerning the end sought in the enactment of the phrase. Such end, or purpose was to bring within the purview of the act policies of insurance upon property in this state and upon lives of residents of this state, although the contract of insurance may have been executed outside our borders. Plaintiff so concedes. If such was the purpose of the phrase, then plaintiff's thought, above mentioned, is lacking in appeal unless life insurance policies and contracts for annuities are in their essentials so identical that there was no room for exercise of legislative discretion as to making the omission, and consequently the legislature as a matter of course would have included annuity contracts in the phrase, had such contracts been in mind when the statute was being enacted. But (and plaintiff so claims) life insurance contracts and contracts for annuities are two different things, with more or less distinct characteristics, and we are not willing to say that there was no room for exercise of legislative discretion whether the purposes of the quoted phrase to reach out and draw in for taxation should be, or could successfully be, applied to annuity contracts executed without the state in the same manner as to insurance policies. It may have been in the exercise of a discretion that annuities were omitted from the phrase rather than as explained by plaintiff. But whatever of substance there may be in plaintiff's theory it does not outweigh other matters, which we proceed to mention, indicating the legislative intent.

The tax imposed by section 7022 partakes of the nature of a tax on business and of a license tax or condition required of corporations to enable them to continue business in this state. It is not a property tax. Scottish U. & N. Ins. Co. v. Herriott, 109 Iowa 606, 80 N. W. 665, 77 Am. St. Rep. 548. As a prerequisite to transacting business in Iowa in 1934, plaintiff was required to pay as taxes a certain percentage of the gross amount of premiums received by it for business done in this state. That these words ''business done in this state'' were inclusive of the granting and selling of annuities was made definitely certain by legislative enactment prior to the year 1934. That is, the legislature had identified the granting and selling of annuities as a part of the business permitted and anticipated to be done in this state by insurance companies in the enjoyment of their business licenses. Reference is to chapter 147 of the Acts of the Forty-fifth General Assembly which added to chapter 398 of the 1931 Code,

section 8673-a, which provides that "any life insurance company organized on the stock or mutual plan may grant and sell annuities." This act was applicable to insurance companies of the class to which plaintiff belongs.

It is contended, however, by plaintiff throughout its argument that this conclusion is too broad and that because of the use of the word "premiums" in the statute the expression "business done in this state" should be construed as meaning "insurance business done in this state." In way of comment as to the reasonableness of such construction, it would cause the result that if a foreign insurance company engaged only in the annuity business, it would not only be exempt from taxes but would become a source of loss to the state to the extent of the expense of its supervision. Without discussing what may have been the situation prior to the act passed by the Forty-fifth General Assembly, we are satisfied that the specific designation contained in that Act, together with what has already been said as to what is in the record with respect to the common use of the word "premiums", compels the conclusion that the legislature intended that the granting of annuities was taxable as a part of the business done in Iowa by insurance companies of plaintiff's status, for the year 1934.

Plaintiff also urges that the intention of the legislature that annuity premiums were not to be taxed is shown by the construction of section 7022 over a period of years by officials of the insurance department, acquiesced in by the legislature. The evidence pertaining to that issue has to do with a period prior to the Forty-fifth General Assembly and consequently is not material nor of assistance with respect to a subsequent and materially changed status of the laws of the legislature. Accordingly we think we should refrain at this time from discussing the merits of the proposition.

It is not feasible to review the many cases that have been cited, but mention should be made of the two on which plaintiff especially relies. One is People v. Knapp, 193 App. Div. 413, 184 N. Y. S. 345, 346, affirmed 231 N. Y. 630, 132 N. E. 916. The question was whether moneys received by an insurance company for granting annuities were to be regarded as "premiums" in the computation of a franchise tax. From the majority opinion: "The tax to be laid, therefore, is exclusively a tax on insurance corporations, upon corporations 'doing an insurance busi-

ness in this state,' and it is to be measured by 'all premiums' received 'on all policies, certificates, renewals, policies subsequently canceled, insurance and reinsurance.' ''

The opinion then distinguishes between life insurance and contracts for annuities, quotes dictionary definitions of ''premium'' similar to the one we have already discussed, and then states: ''It is quite evident that within these definitions a contract for an annuity is not a contract for insurance, and that the price paid for annuities is not a premium paid for an insurance policy.'' With this majority opinion but one of the five justices of the court fully concurred. It became a majority opinion because another justice concurred in the result, but for reasons other than those expressed by the majority opinion. In the special concurring opinion that justice said: ''I cannot find that any other term has been used to designate the amount paid for an annuity contract than the word 'premium'. * * * It seems to me that the legislature must have understood that this word 'premiums' covered the income from the sale of annuities; otherwise, this branch of the business would have been specifically exempted from the provisions of the statute.'' The two remaining justices dissented and stated it was their opinion that the legislature, with reasons, considered the business of granting annuities as a life insurance business, and the consideration for it a premium. The result was that a majority of the members of the court rejected the proposition that the word ''premium'' did not have application to amounts realized from granting annuities.

The other case is Commonwealth v. Met. Life Ins. Co., 254 Pa. 510, 98 Atl. 1072. One question was whether amounts received by an insurance company for granting annuities were taxable. The statute imposed the tax upon the entire amount of premiums of every character and description received in money or in the form of notes, credits, or other substitutes for money. The opinion distinguishes between insurance and annuity contracts and makes the somewhat qualified statement that the consideration for an annuity contract is not generally regarded as a premium. The opinion then points out that the Pennsylvania legislature appears to have supposed that the power to make insurance does not confer authority to grant annuities, and that the power to make insurance contracts and grant annuities seems to be recognized as entirely distinct in the Pennsylvania

statute providing for the incorporation of insurance companies. The Court reached the conclusion that the insurance company was not liable for taxes upon money received for granting annuities. It should be noted that in interpreting the statute the court relied largely on the attitude of the Pennsylvania legislature that power to make insurance does not confer authority to grant annuities. As pointed out the attitude of the Iowa Legislature is the opposite. We do not find in these two cases that which leads to a conclusion other than that above stated.

A somewhat analogous case, cited by defendants, is Mutual Benefit Life Ins. Co. v. Commonwealth, 227 Mass. 63, 116 N. E. 469, 470. The statute involved imposed an annual tax of one-fourth of one per cent upon the net value of all policies in force upon December 31 of the year preceding that in which the tax was payable. The issue was whether under such statute annuity contracts should be included in computation of the net value of all policies in force. After a discussion of the statute and of the fact that a company that makes contracts conditioned on the continuance or cessation of human life is an insurance company within the statutory definition, there was the conclusion that: ''We are accordingly of opinion that by the words 'all policies in force on the thirty-first day of December of the year preceding that in which the tax is payable,' the legislature intended to include all contracts of every description issued by life insurance companies doing business in this commonwealth which are based upon the 'continuance or cessation of human life.' ''

The district court erred in holding that plaintiff was not liable for the tax upon the item of $209,362.62. The case is reversed and decree should be entered in the court below in accordance herewith.—Reversed and remanded.

PARSONS, STIGER, SAGER, HAMILTON, KINTZINGER, ANDERSON, and DONEGAN, JJ., concur.