STATE *ex rel.* GULLY, STATE TAX COLLECTOR, *v.* MUTUAL
LIFE INS. CO. OF NEW YORK.

(In Banc.   June 10, 1940.   Suggestion of Error Overruled in Part and
Sustained in Part, Nov. 25, 1940.)

[196 So. 796.   No. 33934.]

(In Banc.   Nov. 25, 1940.)

[198 So. 763.   No. 33934.]

May & Byrd and Creekmore, Creekmore & Capers, all of Jackson, and Walker & Hooker, of Nashville, Tenn., for appellant.

Wells, Wells & Lipscomb, of Jackson, for appellee.

Argued orally by **Wade H. Creekmore** and **John J. Hooker**, for appellant, and by **W. Calvin Wells** and **Hubert Lipscomb**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellant filed its bill in the Chancery Court of Hinds County against appellee, a foreign life insurance company, doing business in this state, to recover the statutory premium tax of two per cent on all premiums collected by appellee on annuity contracts in this State covering the six-year period from 1932 to 1937, inclusive. The cause was tried on bill, answer, agreed facts and

exhibits, resulting in a decree dismissing the bill. From that decree, appellant prosecutes this appeal.

During the period involved, appellant collected on annuity contracts in this state the sum of $583,439.60 The amount of tax sued for is approximately $13,000. The statutes under which the tax is claimed are: Section 111 of Chapter 89 of the Laws of 1932, Section 103 of Chapter 98 of the Laws of 1932, Section 115 of Chapter 118 of the Laws of 1934, and Section 108 of Chapter 20 of the Laws of 1935, Ex. Sess. So far as the questions here are concerned, those statutes are substantially the same except as to the penalties provided. We copy here from Section 108, Chapter 20, Laws of 1935, Ex. Sess.: "All life insurance companies or associations shall pay annually a tax of two and one-fourth (2¼) per centum of the gross amount of premium receipts in this state, less premiums paid to re-insuring companies authorized to do business in this state, and where such reinsuring company pays the tax on such premiums, and less matured endowments and cash dividends paid under policy contracts, in this state during the year, and less premiums returned to policy holders and cancellations, on account of policies not taken; provided, however, that the tax assessed on any such life insurance company shall not be less than an amount equal to two (2) per centum of the gross premiums received by it upon the business done within the state during the said year."

The question is whether or not the writing of annuity contracts is life insurance business. Before beginning business, and annually thereafter, appellant paid to the state the $200 privilege license entrance tax required. Section 107, Chapter 20, Laws of 1935, Ex. Sess. Among the facts agreed to by the parties, necessary to have in mind, were the following:

"The defendant company writes what is commonly known as 'annuity policies or annuity contracts,' which generally speaking are of four classes, viz: (1) immediate life annuities; (2) deferred life annuities, (3) tem-

porary life annuities, and (4) survivorship or reversionary annuities; but writes no other form of annuities of any kind or character. The immediate life annuity contract provides that the life insurance company will pay a. specified periodical income to the annuitant commencing immediately and continuing as long as the annuitant shall live, in consideration of the prior payment of a single sum, often in a large amount. The deferred annuity contract provides that the life insurance company will pay a specified periodical income to the annuitant, commencing after the lapse of a specified time, if the annuitant be then living, and continuing as long as he shall live thereafter, in consideration of the payment either of a specified sum at the issuance of the contract or periodical installments during the period of the deferment. The temporary life annuity contract, infrequently sold, provides that the life insurance company will pay a specified periodical income to the annuitant commencing either immediately or after the lapse of a stated period if the annuitant be then living and continuing during his lifetime, but not beyond a predetermined period, in consideration of the prior payment of a single sum, or, in case the benefits are postponed, periodical installments during the period of deferment. The last and fourth classification, to-wit: survivorship or reversionary annuities, are admitted to be in effect indemnities and in effect life insurance policies, the premiums on which are admitted to be taxable as premiums on life insurance policies. Defendant has uniformly paid taxes on such premiums along with other premium taxes on premiums on life insurance policies.

"In all four classes of these annuity contracts the income payments may be made contingent upon the continuance of a single life, two or more lives jointly, or any survivor of a group of lives. All four classes of these annuity contracts may be issued with certain minimum guarantees, the purpose of which is to enable the annuitant to avoid complete or excessive loss or forfeiture of

his invested capital due to premature death or discontinuance. These minimum guarantees may take the form or (1) (in the case of deferred annuities) a return of all accumulated installments or considerations paid by the annuitant in the event of his death or discontinuance during the deferred period (but a surrender charge may be exacted in the first few years in case of discontinuance); (2) a return of the difference between the total consideration paid by the annuitant and the total of such amounts of annuity payments as he may have received, in the event of his death before his total consideration shall have been returned; and (3) pay a periodical income during the first specified part of the term of the contract, non-contingent upon the continued life of the annuitant, technically known as an annuity certain. . . .

"Agents who write annuity policies or contracts, or are authorized to write annuity policies or contracts, in Mississippi, are required by law to have no other license or certificate of authority other than the license or certificate of authority that is issued to life insurance agents generally, regardless of whether such agents represent life insurance companies writing annuities or not; and life insurance companies engaged in the business of writing annuities are required by law to have no other license to do business in the State of Mississippi except such license as is issued to life insurance companies generally, regardless of whether such companies write annuities or not.

"The same premium or consideration is charged annuitants in Mississippi as is charged annuitants in those states in which the tax is expressly imposed upon such premiums or considerations, or is being paid by the defendant company; and this has been true during the entire period involved. However, the premium tax rate in the State of New York, the domicile of the defendant, never during the period sued on in this action exceeded 1¾% while the premium tax rate in Mississippi has never during said period been less than 2% and at no

time during said period has the State of New York required either domestic or foreign companies to include annuity considerations. or premiums in its gross premiums subject to any premium tax. In fact, from July 1, 1932 to January 1, 1935, the New York premium tax rate was 1% and thereafter from January 1, 1935 to date, the rate was and is 1¾%.

"The consideration for an annuity when the same is paid in periodical installments is sometimes referred to as a premium and a majority of the life insurance companies licensed to do business in the State of Mississippi have used the term 'Premium' in some of their annuity contracts and in some of their notices sent to the annuitants in referring to considerations paid for annuities on the installment basis aforementioned. In all of defendant's annuity contracts, such contracts are denominated 'Annuity No. ———' and none of them are styled or referred to as 'Policy No. ———,' nor is any such annuity contract referred to therein as 'policy.' "

Section 5144 of the Code of 1930 provides how domestic life insurance companies may be formed and the character of business they may engage in. It provides, among other things, that they may "contract for the payment of endowments or annuities, or make and enter into . . . other contracts, conditioned upon the continuance or cessation of human life." It is provided by Section 5274 of the Code that domestic mutual insurance companies organized under the laws of this state, in addition to other insurance, are authorized to contract for the payment of endowments or annuities "conditioned upon the continuance or cessation of human life." Section 5170 of the Code defines life insurance companies. It provides, in substance, that all insurance companies, domestic or foreign, doing business in this state under any charter, contract, agreement or statute, of this or any other state, involving the payment of money or other things of value to families or representatives of policy and certificate holders or members "conditioned upon

the continuance or cessation of human life, or involving an insurance, guaranty, contract or pledge for the payment of endowments for annuities,'' shall constitute insurance business. Section 5159 of the Code provides that in computing the liabilities and reserves of domestic life insurance companies ''the legal minimum standard for the valuation of annuities shall be McClintock's 'Table of Mortality among Annuitants.' ''

The following decisions, which we think are sound, support appellant's position: Northwestern Mutual Life Insurance Company v. Murphy, Commissioner, 223 Iowa 333, 271 N. W. 899, 109 A. L. R. 1054; Mutual Ben. Life Insurance Company v. Commonwealth, 227 Mass. 63, 116 N. E. 469; New York Life Insurance Company v. Sullivan, 89 N. H. 21, 192 A. 297; State ex rel. Holt v. New York Life Insurance Company, 198 Ark. 820, 131 S. W. (2d) 639.

The statute involved in the Iowa case imposed a tax on insurance companies of ''two and one-half per cent of the gross amount of premiums received by it for business done in this state, including all insurance upon property situated in this state and upon the lives of persons resident in this state during the preceding year.'' Code 1931, section 7022. The first headnote to the case states what the court decided as to whether the statute embraced annuity premiums. It is in this language: ''The consideration received by an insurance company for its undertakings to pay annuities is properly included in the amount upon which the company is liable to a tax imposed by a statute requiring every foreign insurance company to pay annually into the state treasury as taxes a stated percentage 'of the gross amount of premiums received by it for business done in this State, including all insurance upon property situated in this State and upon the lives of persons resident in this State during the preceding year.' ''

The court held in the Massachusetts case that annuity contracts were conditioned upon the continuance or ces-

sation of human life and therefore constituted life insurance. The statute involved in the New Hampshire case imposed a tax on every life insurance company doing business in that state of ''one and one-half per cent., of the gross premiums received by it from residents of the state during said year.'' Laws 1909, c. 78, as amended by Laws 1915, c. 47. The statute made no reference to annuity contracts, but the court held that nevertheless it applied to such contracts. The statute involved in the Arkansas case imposed a tax on ''gross premium receipts in this State'' received by life insurance companies. Pope's Dig. section 7965. A majority of the court held that the statute covered premiums on annuity contracts —that such contracts were life insurance. The authorities relied on by appellee in a measure support its contention, but we are of opinion that those referred to above are better reasoned and lay down sounder principles. The definition of annuity contracts in the agreed facts shows that they are conditioned on the cessation or continuance of human life. They are therefore life insurance contracts, notwithstanding no medical examination is required. None is required because it is to the interest of the insurer that the life of the insured shall be short instead of long.

In 1936, the attorney general's office was requested by the insurance commissioner to give an opinion as to whether the statute covered premiums on annuity contracts. Accordingly, that office rendered an opinion that it did not. Appellee takes the position that the state is bound by that departmental ruling. Undoubtedly such a ruling would be strongly persuasive of its correctness if the statute involved were of doubtful meaning, and long acquiescence therein would be controlling. The principle does not apply here. It has no application where the statute is plain and unambiguous. A departmental ruling cannot make a statute mean one thing when on its face it plainly means another thing. Mississippi Cottonseed Products Company v. Stone, 184 Miss. 409, 184 So.

428; Anderson v. Love, Superintendent of Banks, 169 Miss. 219, 151 So. 366, 153 So. 369; Manhatten G. E. Company v. Commissioner, 297 U. S. 129, 56 S. Ct. 397, 80 L. Ed. 528.

We are of opinion, however, that appellee is not liable for the statutory penalties. For a failure to pay the license tax, the statute fixes one hundred per cent., for the years 1932 and 1933, and fifty per cent., for the years 1934, 1935, 1936 and 1937. The question is whether the penalty provision of the statutes have any application to the failure by appellee to pay the premuim tax. We think it has not, and that it applies alone to the $200 tax for the license to do business in the state. The penalty statutes involved are: Section 238, Chapter 89, Laws of 1932; Section 255, Chapter 118, Laws of 1934; and Section 247, Chapter 20, Laws of 1935, Ex. Sess. They provide, in substance, that all persons liable for privilege taxes who shall fail to procure the license therefor "before beginning the business for which the privilege tax is required by law or who shall fail to renew, during the month in which it is due, the license on a business for which he has theretofore procured a privilege license" shall be liable to the penalty.

Penalties are not to be imposed by implication. They must be provided for in plain language. We think that, under the unambiguous terms of the statute, the penalty provisions have no application to the tax on life insurance premiums, but apply alone to a failure to pay and renew annually the license to do business in the state, which is fixed at $200, although the premium tax is denominated in the statute as an additional license tax. In the very nature of the matter, appellee would not be able to pay the premium tax before beginning business in the state, because there would be no premiums earned; they come while the business is going on, and as a part of it, and not before or at the time of beginning business.

The measure of appellee's liability, in addition to the tax on the premiums, is six per cent., interest per annum

on the tax from the dates due. The judgment to be rendered will bear six per cent., interest per annum from date of rendition. Section 1949, Code of 1930.

We send the case back to the chancery court for final decree. In view of the state of the record, we think that court will be more competent to render the final decree than this court.

Reversed and remanded.

**Griffith, J.**, delivered a dissenting opinion.

The taxing statute relied on requires that "all life insurance companies or associations shall pay annually a tax of two and one-fourth $(2\frac{1}{4})$ per centum of the gross amount of premium receipts in this state."

The annuity policies are covered in the agreed statement of the facts, a portion of which has been copied in the majority opinion. The decision should turn on the question whether these annuity contracts are life insurance policies. If they are not, then the considerations paid for them are not insurance premium receipts.

The dictionaries in ordinary use, such as Webster and Century, define the word "premium" as meaning the consideration paid for a contract of insurance, and the law dictionaries, such as Bouvier and Anderson, give the same definition. Our statute, Sec. 5131, Code 1930, defines a contract of insurance in these words: "A contract of insurance is an agreement by which one party for a consideration promises to pay money or its equivalent, or to do some act of value to the assured, upon the destruction, loss or injury of something in which the assured or other party has an interest, as an indemnity therefor . . ."

Under the foregoing definition, the annuity policies embraced under either of the first three classes mentioned in the agreed statement of the facts are not policies of life insurance. The obligations of the company do not arise because or on account of death and as an indemnity

therefor, but as has been tersely expressed, the purpose of such a contract is a provision for life, not for death. The large majority of the courts have so held, some of them after elaborate discussion. For such elaborations reference may be had to the following cases: State of Wyoming ex rel. v. Hamm, 54 Wyo. 148, 88 P. (2d) 484; Wellman v. Board of Commissioners, 122 Kan. 229, 252 P. 193; Hall v. Metropolitan Life Ins. Co., 146 Or. 32, 28 P. (2d) 875; In re Thornton's Est., 186 Minn. 351, 243 N. W. 389; People v. Knapp, 193 App. Div. 413, 184 N. Y. Supp. 345, affirmed 231 N. Y. 630, 132 N. E. 916; Com. v. Metropolitan Life Ins. Co., 254 Pa. 510, 98 A. 1072; Carroll v. Equitable, etc., Society, D. C., 9 F. Supp. 223; Daniel v. Life Ins. Co. (Tex. Civ. App.), 102 S. W. (2d) 256; Old Colony, etc., Co. v. Commissioner, 37 B. T. A. 435; State of North Dakota v. Equitable, etc., Society, 68 N. D. 641, 282 N. W. 411. Contra, Northwestern Mut. Life Ins. Co. v. Ray Murphy, 223 Iowa 333, 271 N. W. 899, 109 A. L. R. 1054; New York Life Ins. Co. v. Sullivan, 89 N. H. 21, 192 A. 297; State ex rel. Holt v. New York Life Ins. Co., 198 Ark. 820, 131 S. W. (2d) 639; Mutual Benefit Life Ins. Co. v. Com., 227 Mass. 63, 116 N. E. 469. The four minority cases above cited are those, and those only, upon which the controlling opinion in the present case relies.

We ought to ascribe the usual and ordinary meaning to the use of the word "premium" in the statute, and there has been shown what that meaning is. But when everything is said that could be said, except by mere assertion, in favor of the contention that annuity considerations are premiums, the question is fairly advanced no further than to put the meaning in doubt, and this would bring into the solution two principles both of which are definitely settled in this state. And the first is that tax laws are interpreted strictly in favor of the taxpayer and any doubt must be resolved against the state. McKenzie v. Adams-Banks Lbr. Co., 157 Miss. 482, 128 So. 334, and the cases therein cited.

The second principle, and the facts are such that it ought to be controlling here, is that where the executive and administrative officers of the State charged with the execution and administration of a particular statute have for a long and unbroken period of time uniformly construed and administered it as not imposing the tax now lately claimed, and the same statute in the same or exactly similar language has been re-enacted long after the adoption of the departmental construction, the statute as re-enacted will be considered as having accepted that departmental construction as a part of the enactment. Miller v. Yazoo & M. V. R. Co., 160 Miss. 603, 132 So. 597; White v. Miller, 160 Miss. 734, 133 So. 146; Gully v. Jackson International Co., 165 Miss. 103, 145 So. 905.

In Section 1, Chap. 227, Laws 1912, the language is the same as that of the statute quoted in the opening paragraph of this opinion. Likewise in the next act dealing with the subject, Section 1, Chap. 203, Laws 1916. So in each succeeding enactment: Section 31, Chap. 104, Laws 1920; Section 134, Chap. 118, Laws 1926; Section 103(b), Chap. 88, Laws 1930; Section 111(b), Chap. 89, Laws 1932; Section 115, Chap. 118, Laws 1934, and the quoted section, Sec. 108, Chap. 20, Laws 1935, Ex. Sess. During all those years all of the departments charged with the collection of taxes due by insurance companies construed the statute to mean, else they would have proceeded otherwise, that the so-called premiums on the annuities of the three classes above referred to were not liable for the tax. The stipulation upon the facts recites: "That during all the years prior to 1936, during which the annual statements made by defendant to the Commissioner of Insurance of the State of Mississippi were accepted and filed by said Commissioner, no demand or request of the defendant was ever made by the Commissioner of Insurance of the State of Mississippi or by the State Tax Collector of said State for the payment of a tax on considerations or receipts for annuity contracts and that defendant during that time never paid such a

tax." It was not until July, 1936, after a period of more than twenty years, that the then Insurance Commissioner raised the question, and the matter having been submitted to the Attorney General, he ruled on September 25, 1936, that these annuity considerations were not liable. At the next ensuing regular session of the legislature by Section 10, Chap. 117, Laws 1938, the law was re-enacted in precisely the same language, and it may be of interest to add that the new privilege tax code, adopted only a few weeks ago, carried the same verbiage. The departmental construction, as evidenced by the course actually pursued now for nearly thirty years, when taken together with the numerous re-enactments in the same language, ought to be considered as having foreclosed the question, and the decree of chancery court adjudging that there is no liability for the tax now demanded, ought to be affirmed.

The majority go around the two foregoing long and firmly established rules of adjudication by declaring that the interpretation which they adopt is not open to doubt. They adopt an interpretation contrary to the standard lay and law dictionaries, contrary to the holdings of the large majority of the courts of the country, and contrary to the generation-old departmental construction; and yet say their position is one free from doubt. It seems to me that it would be better for the law that in such a situation that attitude should not be taken.

**Smith, C. J.,** joins in the foregoing dissent.

**McGehee, J.,** delivered the opinion of the court on suggestion of error.

The majority opinion heretofore rendered held that the appellee was liable for the taxes on annuity considerations paid to it throughout the period sued for, together with six per cent., interest per annum thereon from the dates when due respectively. It is now suggested that

the Court erred in holding that appellee was liable (1) for any of the taxes sued for; (2) for any interest thereon; and (3) that if liable for any taxes, the Court was in error in holding that the same could be collected on annuity considerations paid to the appellee during the first six months of the year 1932 for the reason that the right to recover the same for such period was barred by Section 6996, Mississippi Code of 1930, at the time of the filing of this suit. A majority of the members of the Court are of the opinion that the suggestion of error should be overruled as to the contention first above mentioned, while the two Justices who dissented from the former decision are of the opinion that the same should be sustained in toto; and it is the view of all that the same should be sustained on the second and third grounds above mentioned.

The case having been reversed and remanded by the former opinion and judgment of the Court for the purpose only of having the interest duly calculated on the taxes due, it is now ordered that the cause be reversed and that judgment be rendered here for the amount of the taxes due, without the assessment of any penalties or interest against the appellee.

The suggestion of error is therefore overruled in part and sustained in part accordingly.

Reversed and judgment here for the appellant.