In re Taxation of Annuities.

Bankers Life Insurance Company of Des Moines, Iowa, appellant, v. Loren H. Laughlin, Director of Insurance, State of Nebraska, et al., appellees, Aetna Life Insurance Company et al., interveners-appellants.

70 N. W. 2d 474

Filed May 27, 1955. No. 33718.

*Fraizer & Fraizer,* for appellants.

*Clarence S. Beck,* Attorney General, and *Ralph D. Nelson,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an appeal from an order of the Director of Insurance holding that considerations received from annuities by life insurance companies licensed to do business in this state are to be reported and are subject to the tax provided in sections 77-908 and 77-909, R. S. Supp., 1953. The matter was appealed to the district court where the order was sustained. On appeal here, we affirm.

On March 10, 1952, the director issued an order that all life insurance companies licensed to do business in this state should compute and remit the premium tax based on considerations received from annuities on forms provided for that purpose. He set the matter for hearing so that all parties aggrieved could show cause why their licenses should not be rescinded or not be reissued if they failed to comply. A hearing was had and appearances were made by the Life Insurance As-

sociation of America and American Life Convention. These parties filed a written showing reciting the problem presented by the statutes involved, contending that there is a difference between annuity considerations and insurance premiums, and attacking the policy of such a tax.

After the hearing the director issued his final order requiring the computing and remitting of the tax; providing for the payment of the tax under protest; and providing for an appeal by one or more of the licensed companies on behalf of all such companies as a class. Bankers Life Insurance Company of Des Moines, Iowa, perfected the appeal under the authority of section 44-154, R. R. S. 1943. In the district court other life insurance companies intervened. All companies took the concluding position that they were entitled to a reissuance of their certificates of authority upon the payment of a tax upon the gross amount of direct writing premiums, excluding all annuity considerations. The appellant and interveners by supplemental pleadings show the payment of the tax under protest for the years 1952 and 1953.

A demurrer was filed on the ground that the petitions did not state a cause of action. The trial court sustained the demurrer. The insurance companies elected to stand upon their petitions. The action was dismissed, and this appeal followed.

The insurance companies do not plead the terms of their annuity contracts nor furnish the forms of those contracts. They rest their position on the broad base that considerations received for annuity contracts are not taxable under the statutes. This prevents our consideration of the terms of the contracts as was done by the courts in State ex rel. Gully v. Mutual Life Ins. Co. of New York, 189 Miss. 830, 196 So. 796; Equitable Life Assur. Soc. v. Johnson, 53 Cal. App. 2d 49, 127 P. 2d 95; and Northwestern Mutual Life Ins. Co. v. Murphy, 223 Iowa 333, 271 N. W. 899, 109 A. L. R. 1054.

In 1903 the Legislature, in a bill providing for the public revenues, provided that foreign life and accident insurance companies doing business in this state should pay into the state treasury "two per cent of the gross amount of premiums received by it * * * for business done in this state * * *." Laws 1903, c. 73, § 59, p. 404. In section 61, page 405, it provided that life and other companies organized under the laws of this state should be taxed "upon the gross amount of premiums received by it for all Nebraska business done within the state * * *," with exceptions not important here.

The Legislature in 1921 in an act relating to the public revenue (chapter 133, page 545) in article X, section 2, page 588, re-enacted substantially the provisions relating to foreign insurance companies above quoted, and then provided that insurance companies organized under the laws of this state (with exceptions not important here) should pay "four (4) mills upon the gross premiums collected in this state * * * less reinsurance paid on Nebraska business and dividends paid policyholders in Nebraska * * *." § 4, p. 589. This latter provision was amended in Laws 1933, c. 156, § 7, p. 597, and in Laws 1935, c. 154, § 3, p. 569. The amendments are not pertinent here.

The administrative construction of the acts prior to 1937 is not shown. It does appear in the showing made by the insurance companies before the director that, as a result of an opinion of the Attorney General, the Department of Insurance ruled that annuity considerations received after 1937 were subject to the premium tax, and that thereafter foreign life insurance companies doing business in Nebraska paid the tax upon annuity considerations. We find no statement as to what was done by domestic companies.

In this connection, consistent with our holdings (see 10 Nebraska Digest, Statutes, Key No. 219), we quote with approval from State v. Equitable Life Assur. Soc., 68 N. D. 641, 282 N. W. 411, as follows: "While it is

true that the rulings of executive officers who have practically construed a law are not conclusive, nevertheless 'the ruling of an executive officer upon a point where it is his sworn duty to act, especially where the rulings have been acquiesced in by those whose financial interests were involved, are always given considerable weight in the courts, and when the power is doubtful the uniform rulings in an executive office would be followed, and allowed to turn the scale. Cooley, Const. Lim. 3d. ed. marg. pp. 69, 70.' "

The Legislature is presumed to know the construction of its statutes by the executive departments of the state. John Hancock Mutual Life Ins. Co. v. Lookingbill, 218 Iowa 373, 253 N. W. 604; State v. Equitable Life Assur. Soc., *supra*.

The provisions of the 1921 act above cited became section 77-902, R. S. 1943.

In 1949 the Legislature enacted Laws 1949, c. 228, p. 633. This act was an amendment of section 77-902, R. S. 1943, and was entitled an act "to provide which insurance companies shall pay the tax as provided in this section * * *." It provided that every insurance company organized under the laws of any other state or country and transacting business in Nebraska "as defined in subsections (2) or (3) of section 44-201" or both shall pay "two per cent of the gross amount of premiums received by it during the preceding calendar year for business done in this state * * *." Subsection (2) of section 44-201, R. S. 1943, provided: "LIFE INSURANCE—Upon lives of persons, including endowments and annuities, and every insurance pertaining thereto and disability benefits." The 1949 Legislature re-enacted that provision also. See Laws 1949, c. 138, § 1, p. 358.

This appears to be a clear legislative recognition that the "business" of foreign life insurance companies done in this state, upon which the two percent of the gross premiums was to be paid, included the business of "en-

dowments and annuities." The showing here is that the foreign companies so accepted the construction of the act and paid the tax.

It should also be pointed out that in 1913 the Legislature adopted a comprehensive insurance code (Laws 1913, c. 154, p. 393), in which it was provided that "No policy of life or endowment insurance * * * shall.be issued or delivered in this state unless it contains in substance the following provisions: * * * Thirteenth— In case the proceeds of a policy are payable in installments or as an annuity a table showing the amounts of the installments or annuity payments * * *." § 101, p. 446. This provision became section 44-602, Comp. St. 1929; section 44-502, R. S. 1943; and is now section 44-502, R. R. S. 1943. It is clear that the Legislature has considered that annuities were a part of a life insurance policy and business.

That conclusion does not appear to have been questioned by the insurance industry doing business in this state subsequent to 1938 and prior to the 1951 amendments that produced this controversy.

When the 1951 Legislature convened, Chapter 77, article 9, page 86, R. R. S. 1943, contained six sections: Section 77-901 provided for a tax on foreign fire insurance companies based on gross premiums (less certain items), and as tangible property. Section 77-902 was the 1949 act, above discussed, dealing with foreign life and accident companies. Section 77-903 provided for a tax on foreign insurance companies doing lines of insurance business not involved here, and provided for the payment "as a tax on such business, two per cent of such gross receipts," less the tax, if any, on workmen's compensation insurance. Section 77-904 provided that domestic insurance companies other than fire and certain fraternal and mutual companies "shall pay four mills upon the gross premiums collected in this state * * * less reinsurance paid on Nebraska business and dividends paid policyholders in Nebraska

* * *." Section 77-905 provided for the taxation of domestic fire insurance companies upon gross premiums and as tangible property. Section 77-906 applied to foreign and domestic writers of workmen's compensation insurance and provided a tax on foreign writers of 2 percent of gross premiums and, on domestic writers, 4 mills on gross premiums.

Then came the act of 1951 (Laws 1951, c. 256, p. 877, now sections 77-907 to 77-914, R. S. Supp., 1953), upon which the appellants here rest their cause. It repealed Chapter 77, article 9, R. R. S. 1943.

Section 1 of the 1951 act contained definitions to which we shall refer later.

Section 2 of the 1951 act related to "Every foreign or alien insurance company * * * except fraternal beneficiary associations" and required the payment of a tax "of two per cent of the gross amount of direct writing premiums received * * * for business done in this state." The previous provision in the 1949 act relating to life insurance companies had been "two per cent of the gross amount of premiums received * * * for business done in this state," and also as it had been in section 77-902, R. S. 1943. The change here was between "gross amount of premiums" and "direct writing premiums."

Section 3 of the 1951 act related to domestic insurance companies and here it was provided that the tax was to be based on "the gross amount of direct writing premiums received * * * for business done in this state." This is the language contained also in section 2 of the 1951 act. It is a change from the language of section 77-904, R. S. 1943, relating to domestic companies which provided for a four mill payment "upon gross premiums collected in this state * * * less reinsurance * * *." § 77-904, R. R. S. 1943. Here the 1951 Legislature included the phrase "for business done" as it had been in the previous acts and continued to be in the act relating to foreign companies. Sections 4, 5, 6, and 7 of

the 1951 act do not relate to the matters here involved.

It will thus be seen that throughout the Legislature has used business done as the base element upon which the premium tax is calculated.

It appears that the Legislature in 1951 intended to provide generally for one tax rate on foreign insurance companies and a lesser tax rate on domestic companies based on premiums received for business done in this state. The Legislature obviously likewise intended to exempt from the tax premiums received on reinsurance, for it defined direct writing to mean "insurance as defined in section 44-102, but shall not include reinsurance as defined in section 44-103." § 77-907 (5), R. S. Supp., 1953; Laws 1951, c. 256, § 1 (5), p. 878. This exception appeared in the earlier acts.

The definitions referred to are: " 'Insurance' is a contract whereby one party, called the 'insurer,' for a consideration, undertakes to pay money or its equivalent, or to do an act valuable to another party, called the 'insured,' or to his 'beneficiary,' upon the happening of the hazard or peril insured against whereby the party insured or his beneficiary suffers loss or injury." § 44-102, R. R. S. 1943.

" 'Reinsurance' means a contract by which an insurer procures a third party to insure it against loss or liability by reason of such original insurance." § 44-103 (16), R. R. S. 1943.

These definitions were obviously included in the 1951 act for the purpose of showing the legislative intent that "reinsurance" premiums should not be included. There is no indication of a legislative intent to otherwise restrict or change the base coverage of the tax.

The words "direct writing premiums received * * * for business done in this state" must be construed together, and not separately, as appellants would have us do.

The word "premiums" is a word the meaning of which must be determined by its use.

It is defined in the 1951 act as: "Premiums shall mean

the consideration paid to insurance companies for insurance and shall include policy fees, assessments, dues, or other similar payments." Laws 1951, c. 256, § 1, p. 878; § 77-907, R. S. Supp., 1953.

Appellants contend that because of the definitions, the word "premiums" is limited to payments made for insurance and hence does not include payments made for annuities. We have heretofore pointed out the administrative and legislative construction of the word "premiums" in these acts, at least insofar as it relates to foreign companies. Likewise we have pointed out that the Legislature in the 1951 act made the provision as to domestic companies conform to that theretofore made as to foreign companies.

The Supreme Court of Iowa in Northwestern Mutual Life Ins. Co. v. Murphy, *supra,* said: "* * * a mere definition is not always a safe foundation for correct conclusions. One reason is that, except in mathematics, it is difficult to frame exhaustive definitions of words." The court considered the use of the word "premiums" in the contracts before it, and concluded that the word "premiums" was not necessarily inapplicable to annuity contracts. In fact our Legislature has used the word "premiums" as descriptive of the payment on annuity contracts, for it has provided: "Any policy containing a provision for a deferred annuity on the life of the insured only, unless paid for by a single premium, shall provide that in the event of the nonpayment of any premium after three full years' premium shall have been paid, the annuity shall automatically become converted into a paid-up annuity for such proportion of the original annuity as the number of completed years' premiums paid bears to the total number of premiums required under the contract." § 44-372, R. R. S. 1943.

It is pointed out in New York Life Ins. Co. v. Sullivan, 89 N. H. 21, 192 A. 297, that the use of the word "premium" to describe the consideration of an annuity contract is technically correct and recognized by Black-

stone in his Commentaries, Book II, page 461, who referred to the practice of purchasing annuities for lives at a certain price or premium.

The Legislature did not impose a tax upon the premium for insurance written, but upon "business done." We have heretofore pointed out that the writing of annuity contracts has clearly been included in the business of life insurance companies. This distinction is made clear by the Supreme Court of Iowa in Northwestern Life Ins. Co. v. Murphy, *supra*. The court there held: "It is contended, however, by plaintiff throughout its argument that this conclusion is too broad and that because of the use of the word 'premiums' in the statute the expression 'business done in this state' should be construed as meaning 'insurance business done in this state.' In way of comment as to the reasonableness of such construction, it would cause the result that if a foreign insurance company engaged only in the annuity business, it would not only be exempt from taxes but would become a source of loss to the state to the extent of the expense of its supervision."

We turn to a consideration of the decisions of other states that deal with taxes levied on premiums received on business done. It is agreed in substantially all of the cases that there is a difference between insurance contracts as such and annuity contracts as such. The question, however, is whether or not the Legislatures intended to include or exclude annuity contracts within the term business done.

In Northwestern Mutual Life Ins. Co. v. Murphy, *supra*, the court had a statute that levied a tax on "gross amount of premiums received * * * for business done * * *." There it was held that the Legislature had recognized that the selling of annuities was a part of the business permitted and anticipated to be done by insurance companies as a part of their business. It was held that the considerations received for annuities were premiums and taxable.

Missouri had a statute that authorized life insurance companies to be formed "for the purpose of making insurance upon the lives of individuals, * * * and to grant, purchase and dispose of annuities and endowments * * * and to provide * * * for disability occasioned by accident or sickness * * *." This may be compared with our "LIFE INSURANCE—Upon lives of persons, including endowments and annuities, and every insurance pertaining thereto and disability benefits." § 44-201 (2), R. R. S. 1943.

The Missouri Supreme Court held: "The life insurance business is a matter of public concern. For that reason the section above set forth was enacted. The Legislature knew that annuities were sold by life insurance companies. It knew that accident insurance and health insurance were sold by life insurance companies. It knew that annuities and accident and health insurance were not life insurance. For these reasons it separately authorized life insurance companies to engage in the business of selling annuities and in the business of selling accident and health insurance. It did so for the purpose of supervision, regulation and taxation. There could have been no other purpose. The section presents no ambiguity. In other words, the Legislature classified annuities and accident and health insurance as life insurance solely for the purpose of supervision, regulation and taxation. If so, the money collected on an annuity policy sold in this State is a life insurance premium within the meaning of Sec. 5979, R. S. 1929, which follows: 'Every insurance company * * * not organized under the laws of this state, shall * * * annually pay tax upon the premiums received * * * in this state, or on account of business done in this state, for insurance of life, property or interest in this state at a rate of two per cent per annum in lieu of all other taxes * * *.'" State ex rel. Aetna Life Ins. Co. v. Lucas, 348 Mo. 286, 153 S. W. 2d 10.

Massachusetts had a statute that levied an excise

tax upon a company "in the business of life insurance * * * upon the net value of all policies in force * * *." Their statute also provided that "All corporations * * * doing business * * * involving the payment of money * * * conditioned upon the continuance or cessation of human life, or involving an insurance guaranty, contract or pledge for the payment of endowments or annuities, shall be deemed to be life insurance companies * * *." See our section 44-201 (2), R. R. S. 1943. The court held: "And the conclusion is irresistible that if the petitioner had issued only contracts for the payment of annuities, it must be deemed to be a life insurance company. If so it would be accurately described as in 'the business of life insurance.' It is none the less so engaged because it also issues policies of life insurance. * * * While language more technically appropriate might have been used, the business of issuing contracts for annuities is under the statute 'the business of life insurance,' and if the word 'policy' ordinarily imports that at death a certain sum will be payable by the insurer, yet a 'policy' is a contract, and 'each policy of ordinary business' where. the insurer engages solely in providing such security would cover the business of issuing contracts of annuity." Mutual Benefit Life Ins. Co. v. Commonwealth, 227 Mass. 63, 116 N. E. 469.

New Hampshire had a statute that levied a tax "upon the gross premiums received by it upon business done within the state * * *." Later the words "from residents of" was substituted for "business done within." They also had a statute which authorized the formation of corporations "for the purpose of conducting the following kinds of insurance business: * * * On the lives of persons and every insurance pertaining thereto or connected therewith, including endowments, and to grant, purchase or dispose of annuities." See our section 44-201 (2), R. R. S. 1943. The court considered the "practical construction" of the statutes that had been followed. The court held that receipts for annuity con-

tracts were taxable. New York Life Ins. Co. v. Sullivan, *supra.*

Arkansas had a statute which imposed a tax upon every life insurance company doing business in the state which required a statement of "gross premium receipts" and levied a tax on "such gross receipts." The court held that sums of money paid for annuity insurance were taxable under the statute. State v. New York Life Ins. Co., 198 Ark. 820, 131 S. W. 2d 639.

Kansas had a statute which levied a tax "upon all premiums received" less premiums returned and premiums received for reinsurance. It also had a statute authorizing the organization of insurance companies "to make insurance upon the lives of persons and every insurance appertaining thereto or connected therewith, and to grant, purchase or dispose of annuities: * * *." See our section 44-201 (2), R. R. S. 1943. The plaintiff admitted that its survivorship annuity contracts were life insurance contracts and that the considerations received from such policies were taxable but contended that its annuity contracts otherwise were not insurance contracts and the consideration was not taxable. The court could reach no conclusion as to prior "operative interpretation." It held that the word "premium" included consideration for annuity contracts. Equitable Life Assur. Soc. v. Hobbs, 154 Kan. 1, 114 P. 2d 871, 135 A. L. R. 1234.

California had a constitutional provision providing that: " 'Every insurance company * * * shall * * * pay * * * a tax * * * upon the amount of gross premiums received upon its business done * * *,' " less return premiums and reinsurance. The question was whether considerations received on annuity contracts were taxable. That state had a statute providing that " 'Life insurance includes insurance upon the lives of persons or appertaining thereto, and the granting, purchasing, or disposing of annuities.' " See our section 44-201 (2), R. R. S. 1943. The court, as did others cited, considered

at length the meaning of the term "premiums" and discussed the prior administrative construction. The court held: "It follows, from an analysis of the California constitutional and statutory provisions, from an analysis of the proper meaning of the term 'premium,' and from the weight of authority outside the state, that considerations received upon the sale of annuities are 'premiums' and are taxable as such, and that the position taken by plaintiff on its appeal is unsound." Equitable Life Assur. Soc. v. Johnson, *supra*.

Mississippi had a statute which levied a 2¼ percent tax upon "the gross amount of premium receipts * * *" less reinsurance and other items, and providing that the tax assessed should not be less than 2 percent of the "gross premiums received by it upon the business done * * *." The question was whether the writing of annuity contracts was life insurance business. It also had a statute providing among other things that " 'an insurance, guaranty, contract or pledge for the payment of endowments for annuities,' shall constitute insurance business." Prior to the litigation, the Attorney General ruled that the statute did not cover premiums on annuity contracts. The court put aside the departmental ruling on the ground that the statute was "plain and unambiguous." (This conclusion was the subject matter of a dissent.) The court held that the considerations received on annuity contracts were taxable. State ex rel. Gully, v. Mutual Life Ins. Co. of New York, *supra*.

Other courts have reached contrary conclusions.

Pennsylvania had a statute that imposed a tax upon the entire amount of premiums "received from business transacted." It also had a statute authorizing the organization of companies "* * * To make insurance either upon the stock or mutual principle upon the lives of individuals, and every insurance appertaining thereto or connected therewith, and to grant and purchase annuities." See our section 44-201 (2), R. R. S. 1943. The court held that the statute did not impose a tax on the

consideration paid for the granting of annuities. Commonwealth v. Metropolitan Life Ins. Co., 254 Pa. 510, 98 A. 1072.

New York had a statute which levied a tax on "the gross amount of premiums received * * * for business done * * *." They also had a statute which authorized the formation of an insurance corporation to write insurance "upon the lives or the health of persons and every insurance appertaining thereto, and to grant, purchase or dispose of annuities." It was held that premiums paid did not include the sums representing annuity purchases. People ex rel. Metropolitan Life Ins. Co. v. Knapp, 193 App. Div. 413, 184 N. Y. S. 345, affirmed in 231 N. Y. 630, 132 N. E. 916.

These Pennsylvania and New York cases are extentively reviewed, analyzed, weighed, and not followed by the courts for reasons stated in the following opinions previously referred to herein: Northwestern Mutual Life Ins. Co. v. Murphy, *supra;* Equitable Life Assur. Soc. v. Johnson, *supra;* Equitable Life Assur. Soc. v. Hobbs, *supra;* State v. New York Life Ins. Co., *supra;* and New York Life Ins. Co. v. Sullivan, *supra.*

Four other cases are cited by appellants to which we now refer and which are distinguishable from the instant case.

Texas had a statute which levied a tax on the "gross amount of premiums collected *. * * upon policies of insurance" which is to be distinguished from, "business done," as made in the foregoing cases. Texas followed the New York and Pennsylvania cases above discussed, and held that premiums on policies of insurance did not include considerations paid for annuity contracts. Daniel v. Life Ins. Co. of Virginia (Tex. Civ. App.), 102 S. W. 2d 256.

The North Dakota statute levied the tax on the "gross amount of premiums received." Here it was shown that the departmental construction was that premiums on annuity contracts were not within the contemplation

of the Legislature when it used the words "gross premiums." The court gave weight to that departmental construction. It discussed Northwestern Mutual Life Ins. Co. v. Murphy, *supra*, and pointed out (as in the instant case) the tax was on premiums "for business done." It followed the New York and Pennsylvania cases. State v. Equitable Life Assur. Soc., *supra*.

Wyoming had a statute that levied the tax upon "gross premiums" received "for insurance." There the executive department for some years had not demanded a tax on considerations paid for annuities. The court considered that fact. The court held that the considerations paid for annuity contracts were not premiums for insurance and hence were not taxable under the act. State ex rel. Equitable Life Assur. Soc. v. Ham, 54 Wyo. 148, 88 P. 2d 484.

Arizona had a statute that provided for a tax on "the gross amount of all permiums received on policies and contracts of insurance * * *." It also had a statute as follows: "Life insurance, which includes insurance upon the lives of persons or appertaining thereto, *and* the granting, purchasing, or disposing of annuities." The statute had previously been "Life Insurance including endowments or annuities." The court said: "It is significant that the language was changed from *including* annuities within the term 'life insurance' to a separate classification using the conjunction *'and'* in the amendment." It was conceded "by the company that in those states where a tax is imposed upon premiums received 'for business done', the tax is properly applied to 'considerations for annuities'." The court cited for that distinction Northwestern Mutual Life Ins. Co. v. Murphy, *supra*, and Equitable Life Assur. Soc. v. Johnson, *supra*, and distinguished Northwestern Mutual Life Ins. Co. v. Murphy, *supra*, from State v. Equitable Life Assur. Soc., *supra*, and State ex rel. Equitable Life Assur. Soc. v. Ham, *supra*, and Daniel v. Life Ins. Co. of Virginia, *supra*. The distinction pointed out is that

between premiums on insurance and premiums on business done. The court held that the Legislature did not intend to include considerations for annuities in the term "premiums" but limited it to policies and contracts of insurance. Corporation Commission v. Equitable Life Assur. Soc., 73 Ariz. 171, 239 P. 2d 360.

As we have heretofore pointed out, no such limitation appears in our statute.

Accordingly, we hold that considerations received for annuity contracts by life insurance companies licensed to do business in this state are included within the provisions of sections 77-908 and 77-909, R. S. Supp., 1953.

The judgment of the trial court is affirmed.

AFFIRMED.