Wellman v. Jewell County Comm'rs.

No. 26,841.

G. R. WELLMAN, *Appellant*, v. THE BOARD OF COUNTY COM-
MISSIONERS OF THE COUNTY OF JEWELL et al., *Appellees*.

SYLLABUS BY THE COURT.

TAXATION—*Property Subject to Taxation—Contract for Payment of Life An-
nuity*. A contract for the payment of a life annuity is not taxable against
the annuitant under a statute making all property subject to taxation in
the manner provided in the act, but containing no express reference to an-
nuities by name or specific description and indicating no standard by which
its value is to be measured, other than the general one of the usual selling
price or such price as it is believed could be obtained therefor.

Appeal from Jewell district court; WILLIAM R. MITCHELL, judge. Opinion
filed January 8, 1827. Reversed.

*R. C. Postlethwaite* and *D. H. Postlethwaite*, both of Mankato, for the
appellant.

*D. M. McCarthy* and *L. E. Weltmer*, both of Mankato, for the appellees.

*T. M. Lillard, Frank G. Drenning*, both of Topeka, *S. C. Bloss*, of Winfield,
*Julien T. Davies, Joseph S. Auerbach, Edward Cornell, Charles E. Hotchkiss,
Alexander J. Field*, all of New York, N. Y., *Frederick A. Gaskins*, of Boston,
Mass., and *W. H. G. Gould*, of Philadelphia, Pa., as *amici curiæ*.

The opinion of the court was delivered by

MASON, J.:    This case involves the question whether under the
law as it existed in Kansas until 1925 the annuitant is required to
pay taxes upon a life annuity. Before that time the statutes relating
to taxation made no express reference to annuities. In that year
they were included in the list of intangibles covered by the term
"credits," which by another act of the same session were subjected
to a tax of 25 cents on each $100 of value, and exempted from other
taxation. (Laws 1925, ch. 278, § 1, ch. 277, § 2.)

In 1919 G. R. Wellman, then 70 years of age, paid $1,000 to the
Board of Foreign Missions of the Methodist Episcopal Church and
received in return a written contract thus worded:

"Whereas, G. R. Wellman, of Burr Oak, Kan., has donated to, and paid
into the treasury of, the Board of Foreign Missions of the Methodist Episcopal
Church the sum of one thousand and no one-hundredths dollars, which is an
executed gift to said Board of Foreign Missions and belongs to said board
from this date absolutely.

"Now, therefore, the said Board of Foreign Missions of the Methodist

Taxation, 37 Cyc. pp. 784 n. 30, 787 n. 50, 51.

Episcopal Church, in consideration thereof, hereby binds itself and its successors to pay to G. R. Wellman during his natural life an annuity of seventy and no-100 dollars payable in half-yearly installments on the last days of March and of September in each year. Upon the death of said G. R. Wellman this obligation shall be no longer binding, and said annuity shall cease; but the legal representatives of said annuitant shall be entitled to the portion of the semiannual installment for the time between the last payment to the annuitant and the date of said annuitant's death."

Later Wellman paid further amounts, receiving similar contracts, bringing the total he had given the board to $13,328, and the total he was to receive annually to $959.40. The taxing officers required Wellman to list these contracts for taxation for the years 1922 and 1923, the amounts charged against him for the two years being $528.21. He brought this action to enjoin the collection of the tax. The district court held the tax valid except in respect to the amount, which was found to be excessive, and an injunction was granted against the collection of more than $214.07. The plaintiff appeals on the ground that the contracts were not taxable, and that even if so the proceedings for arriving at the amount were unauthorized and rendered the tax invalid. Because of the conclusion reached by this court upon the first proposition it will not be necessary to consider the second. Of course the right to tax installments as they fall due is not questioned.

We hold that a life-annuity contract such as that here involved is not rendered taxable by a mere general provision of the statute requiring all property to be taxed, there being no express reference to annuities by name or description and no indication of a specific method for determining their assessment value. Such a contract confers a valuable right and is in a sense property. But the right conferred is of an exceptional character. The contract is not one to pay money, except conditionally, and upon a condition which may never happen. A mere contingent liability is said not to be taxable. (26 R. C. L. 139; 37 Cyc. 784. See, also, 37 Cyc. 1016; *Life Association v. Hill*, 51 Kan. 636, 33 Pac. 300.) Nothing is due upon it and nothing is unconditionally owing upon it until the annuitant survives a definite period. It does not represent an investment in the usual sense. The ordinary investor, he of normal health and strength and self-confidence, is naturally reluctant to part finally with his money in exchange for a periodical return which he is likely to believe—perhaps mistakenly—to be no larger than he

could by personal supervision cause it to earn while he retained the principal for the benefit of his heirs or legatees. The annuitant is usually one chiefly solicitous about means of support. The annuity contract is not one of insurance, but has something of that quality. Its main purpose is to insure against want and worry.

In the present case it is clear the arrangement out of which the contract grew was not an ordinary commercial transaction, and this is true with respect to the great mass of similar instruments issued by religious and educational institutions. Apparently the plaintiff wished the Methodist board to have the benefit of his accumulations, provision being made merely for his own maintenance during the relatively brief remainder of his life. The result sought has sometimes been attained, while the individual has been left clearly free from taxation by this means: He gives his property or money to the institution to be benefited, subject to the condition that it is to invest it and pay him the income, or a part of the income, derived from it during his life. The right to the future income of property has been regarded as not itself taxable, even under a statute taxing annuities, being like unaccrued rents in this respect. (*Chisholm v. Shields, Treas.,* 67 Ohio St. 374. See, also, *State v. Royal Mineral Ass'n,* 132 Minn. 232.) In its practical effects the arrangement here involved is quite similar to an agreement to make periodical payments out of specified property. If the Methodist board pays taxes on the money received from the plaintiff, which it presumably does unless exempted by reason of its religious character, a payment by the plaintiff of taxes on what he is to receive as its proceeds in the future would amount to double taxation. This of course does not imply illegality, but the presumption is against such an interpretation of a statute as to permit it. The present contract, however, while similar in purpose and effect to one which charges an annual payment for life upon specific property, is not technically of that character. The board has become the full owner of the money paid by the plaintiff, and the plaintiff looks solely to its personal promise for the periodical payments.

Our statute contains these provisions:

"That all property in this state, real and personal, not expressly exempt therefrom, shall be subject to taxation in the manner prescribed by this act." (R. S. 79-101.)

". . . That the term 'property,' when used alone in this act, shall mean and include every kind of property subject to ownership. . . . The words

'personal property,' when used in this act in their general sense, shall include all taxable property other than real property, as hereinbefore defined. . . ." (R. S. 79-102.)

". . . Personal property shall be valued at the usual selling price in money at the place where the same may be held; but if there be no selling price known to the person required to fix the value thereon, it shall be valued at such price as is believed could be obtained therefor in money at such time and place. . . ." (R. S. 79-501.)

A life-annuity contract is hardly to be regarded as the subject of barter and sale. The obligor would doubtless always be willing to pay something to be relieved from liability, and perhaps some one could always be found to pay the annuitant something for an assignment of it. Under a statute expressly or by clear implication requiring the taxing of annuities doubtless a method of valuation could be found, as by an inquiry concerning the charges made for issuing them, or a computation of present worth on the theory the annuitant would live out his expectancy according to standard mortality tables and then die, with such variation as his state of health might indicate. We do not suggest that the operation of a statute really intended to tax annuities would be defeated for want of a means to fix its value, but omission to provide an appropriate method has its bearing in ascertaining whether such an intention exists. Obviously, however, a valuation based on averages would not afford any real indication of how much would ultimately be paid on a particular life annuity. The circumstance that prior to 1925 the tax statute neither named annuities nor made an appropriate provision for their valuation is entitled to weight in undertaking to ascertain the actual purpose of the legislature. The force of this consideration is greatly increased by the operative construction heretofore given to the statutes quoted, which have existed practically since the organization of the state. So far as we know the present case is the first instance of an attempt in Kansas to collect a tax on life-annuity contracts. It is true such instruments are now in wider use than formerly, but the device itself is not a new one, and if it were not generally understood that the rights of the beneficiary were not subject to taxation it is only reasonable to suppose efforts at collection would have been made.

A somewhat similar question might arise with reference to the taxability of life insurance policies issued by stock companies on which a number of payments have been made. Such policies are valuable to the owner. They are in a sense property. They have

a surrender value as soon as any considerable payments have been made, but it is incidental and not the object of the contract. It is ordinarily salvage after the primary purpose has been abandoned. There is not a large literature of the subject, but what there is favors the nontaxability view. *(The State Board of Tax Commissioners et al. v. Holliday et al.,* 150 Ind. 216; *Lamb v. Furnas County,* 104 Neb. 402.)  The attorneys-general of a number of states have rendered carefully considered opinions to the same effect. A fire insurance policy is property in the same sense. It has an actual value which is great and a surrender value which is not insignificant. Yet there is no indication of its having been regarded as taxable under our present statute.

In 1899 the Kansas legislature passed an act for the taxation (against the insured) of insurance policies — contracts insuring against loss by fire or otherwise — issued by companies not authorized to do business in Kansas. (Laws 1899, ch. 249.)  It was held unconstitutional among other reasons because of discriminating unreasonably between different classes of companies. *(In re Page,* 60 Kan. 842, 58 Pac. 478.)  It was said in the opinion, speaking of such policies:

"They have property value susceptible of measurement, and it was competent, therefore, for the legislature to treat them as property, as it did, and to make them subject to taxation."  (p. 845.)

We are not undertaking to decide now any question not involved in the present action, but it seems fair to infer from the passage of the act that such policies were not regarded by the legislature as taxable under the statutes as they had previously existed, and from the omission to enact any new law on the subject after this one had been held invalid that the legislature did not care to change the existing status.

So far as actual decisions are concerned there is little direct authority on the subject of the taxability of life annuities without an express statute. One case directly in point, decided in 1865, and followed in a number of later cases in the same state, holds upon grounds substantially the same as those already indicated, that under a statute making all property liable to taxation, the holder of a life-annuity contract can be taxed only upon the sum actually due and payable at the time of the assessment. *(State, Howell, Pros'x, v. Cornell,* 31 N. J. L. 374.)  In 1 Cooley on Taxation, 3d ed., 647, the New Jersey cases are cited in a note, accompanied by the statement:

"Annuitants are only taxable in respect of sums which have become due and remain unpaid." The corresponding text in the fourth edition reads: "Annuities are taxable as personal property, but only, at least in some states, in respect to sums which have become due and remain unpaid." (Vol. 2, § 571.) The New Jersey cases are likewise cited in support of this statement: "An annuitant can be assessed only for the sum actually due and unpaid on the annuity at the time of the assessment, and cannot be taxed for the principal sum producing the annuity." (2 A. & E. Encyc. of L., 2d ed., 392.) It has also been said: "In some states annuities are taxable whether created by will, settlement, or otherwise; but in others, where an annuity is charged upon land, it is not taxable in addition to the land itself." (37 Cyc. 787.) In support of the first clause there are cited only the two earlier Ohio cases discussed below.

In Kentucky, under statutes like our own, a life annuity has been held taxable, but without citation of authority or discussion further than to say: .

"We are of the opinion that the appellant was correct in its contention. The appellee should have listed this obligation according to its present value for each year according to the life table. If she had retained her dower interest in the land, she would have been compelled to pay the taxes on it, and this obligation represented her interest therein." (*Commonwealth v. Nute,* 115 Ky. 239, 243.)

The treasury department has made a regulation requiring an annuity, payable during the life of another person, to be valued as a part of the property of a decedent, on the basis of the mortality tables, for the purpose of measuring the federal estate tax. (Estate Tax Regulations 68, 1924 edition, pp. 20, 21.)

In a number of cases life annuities are held taxable, but under statutes which expressly mention them in that connection. (*Wetmore v. The State of Ohio,* 18 Ohio 77; *Chisholm v. Shields, Treasurer,* 21 Ohio C. C. 231; *Wilkin v. Co. Com'rs of Oklahoma County,* 77 Okla. 88.)

The second of the two Ohio cases above cited was reversed by the supreme court in the case already referred to as holding an annuity charged against specific property to be nontaxable, and in the opinion this was said of the first one—the Wetmore case:

"At this day it is impossible to determine all the considerations that may have influenced the court. Besides, the case seems to have been meagerly

argued, and the controlling questions entirely overlooked." (*Chisholm v. Shields, Treas.,* 67 Ohio St. 374, 381.)

The Oklahoma case cites and quotes from the Ohio common pleas court case which was reversed. That consideration is of small moment, however, inasmuch as the Oklahoma case has no effect as an authority on the question here involved, for it did not deal with a life annuity, but with a contract to pay absolutely a stated sum in annual installments.

The judgment is reversed, with directions to grant the injunction.