No. 34,462

The Equitable Life Assurance Society of the United States, *Plaintiff,* v. Charles F. Hobbs, as Commissioner of Insurance of the State of Kansas, *Defendant.*

(114 P. 2d 871)

Opinion filed June 26, 1941.

*J. L. Hunt, Lester M. Goodell, Margaret McGurnaghan, John H. Hunt* and *George M. Brewster,* all of Topeka, for the plaintiff.

*Jay S. Parker*, attorney-general, *C. Glenn Morris*, special assistant attorney-general, *Oscar Raines, Ralph F. Glenn, Wendell B. Garlinghouse* and *Warren W. Shaw*, all of Topeka, for the defendant.

The opinion of the court was delivered by

WEDELL, J.: This is an original proceeding in mandamus brought by the Equitable Life Assurance Society of the United States, a New York corporation, against Charles F. Hobbs, as commissioner of insurance of the state of Kansas, to require him to issue a certificate of authority to plaintiff to do business in the state of Kansas for the insurance year beginning May 1, 1939, and ending May 1, 1940.

The defendant commissioner refused to issue the certificate unless plaintiff first paid back taxes he claimed to be due on "annuity contracts" sold by plaintiff in Kansas between January 1, 1927, and December 31, 1938, inclusive. It was defendant's contention plaintiff was required by the provisions of G. S. 1935, 40-252, to pay annually a two percent tax on considerations received by it for "annuity contracts" sold in this state. His contention was based upon the theory such considerations constituted "premiums" within the intent of the statute. It was plaintiff's contention the statute did not expressly provide for the payment of a tax on "considerations received for annuity contracts" and was intended to require only a tax on "premiums" paid for insurance contracts, and that the "annuity contracts" in issue were not insurance contracts and in no event insurance upon the lives of persons therein named. Plaintiff further contended that considerations received from annuitants on "annuity contracts" did not constitute premiums in the proper sense of that term. It refused to pay the tax, and the instant action followed. This court granted an alternative writ and issued a temporary order authorizing the company to continue business pending the determination of this lawsuit. The order included other companies similarly situated. Twenty-six other insurance companies have stipulated to abide by the instant decision. A list of such companies is appended to this opinion and is made a part hereof as fully and to the same extent as if the names were incorporated herein.

G. S. 1935, 40-252, is a part of the 1927 insurance code. The first demand by defendant on plaintiff to pay a tax on "considerations received for annuity contracts" was made on May 25, 1936. At all times prior and subsequent thereto plaintiff paid the required tax on premiums collected for life insurance policies sold in this state.

The general character of the particular contracts involved will be stated presently. We shall first consider plaintiff's general contentions. It concedes its survivorship annuity contracts are essentially life insurance policies, and that considerations it has received for such policies are taxable under the statute. Taxes on those contracts have always been paid by plaintiff and are not in dispute in the instant case. Plaintiff contends its other annuity contracts are essentially provisions for life, and not for death. It argues they are not, properly speaking, indemnities for death as are life insurance policies, but are essentially investments for life, and that the consideration received by it for such annuity contracts is not a premium in the proper acceptation of that term. The statute involved is G. S. 1935, 40-252. The pertinent portions thereof provide:

"Every insurance company or fraternal benefit society organized under the laws of this state or doing business in this state shall pay to the commissioner of insurance fees and taxes specified in the following schedules: . . ."

Subdivision B thereof reads:

"As a condition precedent to the issuance of the annual certificate of authority, provided in this code, every company organized under the laws of any other state of the United States or of any foreign country shall pay a tax *upon all premiums* received during the preceding year at the rate of two percentum per annum: *Provided, however,* In the computation of the gross *premiums* all such companies shall be entitled to deduct therefrom any *premiums returned* on account of cancellation and all *premiums* received for *reinsurance* from any other company authorized to do business in this state."

The statute further provides:

"For the purposes of insuring the collection of the tax *upon premiums* as set out in subsection B hereof, every insurance company or association shall at the time it files its annual statement, as required by the provisions of section 40-225, make a return, verified by affidavits of its president and secretary or other chief officers, to the commissioner of insurance, stating the amount of *all premiums* received by the companies in this state, whether in cash or notes, during the year ending on the thirty-first day of December next preceding. Upon the receipt of such returns the commissioner of insurance shall verify the same and assess the taxes upon such companies or associations on the basis and at the rate provided herein and such taxes shall thereupon become due and payable." (Italicized portions represent emphasis placed on statute by plaintiff.)

Plaintiff contends the statute clearly discloses the lawmakers did not contemplate or intend to tax "considerations for annuity contracts" or they would have said so in plain language. It asserts this intent is further clearly indicated by subdivision B which in part

pertains to the computation of gross premiums, and provides for deductions of premiums returned on account of cancellations, and all premiums received from *reinsurance* from any other company authorized to do business in this state.

Plaintiff insists the legislature of this state has always distinguished between the insurance of human life and the business of dealing in annuities. It directs our attention to the statute which declares the separate and distinct purposes for which corporations may be created, and to the statute which specifies the purposes for which insurance companies may be created. The pertinent portion of G. S. 1935, 17-202, provides:

"The purpose for which private corporations may be formed are: . . . (9) The insurance of human life and dealing in annuities."

The pertinent portion of G. S. 1935, 40-401, reads:

"Any ten or more persons, a majority of whom are citizens of this state, may associate in accordance with the provisions of this code and form an incorporated company, upon either the stock or mutual plan, to make insurance upon the lives of persons and every insurance appertaining thereto or connected therewith, *and to grant, purchase or dispose of annuities:* . . ." (Emphasis supplied.)

Plaintiff urges the definite separation by the lawmakers of those two distinct purposes clearly indicates they had in mind two separate and distinct lines of business in which they were authorizing corporations to engage. It asserts if the lawmakers had been of the opinion that authority "to make insurance upon the lives of persons, *and every insurance appertaining thereto or connected therewith,*" included authority "to grant, purchase or dispose of annuities," then it would have been entirely unnecessary to have separately granted the additional and specific right to deal in annuities. (*People v. Knapp,* 193 App. Div. 413, 184 N. Y. S. 345; *Commonwealth v. Metropolitan L. Ins. Co.,* 254 Pa. 510.)

Plaintiff argues the wording of G. S. 1935, 40-401, is especially significant, since that statute and G. S. 1935, 40-252, were both enacted at the same time, and as parts of the 1927 insurance code, must be construed together in order to ascertain the legislative intent. It reasons if the lawmakers had intended to tax the separate business of dealing in annuities it would have said so, instead of exacting a tax only on "premiums," which in ordinary and common parlance are associated with insurance on the lives of persons, and not with annuities which constitute investments, and are essentially provisions against want during life.

In support of its contention that while an annuity contract has some of the qualities of an insurance contract, but in reality is not an insurance contract and is not taxable unless the statute expressly provides it shall be taxed, it cites our own case of *Wellman v. Jewell County Comm'rs*, 122 Kan. 229, 252 Pac. 193. In support of its contention that "annuity contracts," other than survivorship annuity contracts, which are not here in dispute, are not insurance policies, and that "considerations paid by the annuitant for annuity contracts" are not "premiums," and that considerations received by plaintiff for such contracts are not taxable as "premiums" under statutes practically identical with our own, it cites: *Commonwealth v. Metropolitan L. Ins. Co.*, 254 Pa. 510 (1916) ; *People v. Knapp*, 193 App. Div. 413, 184 N. Y. S. 345 (1920) ; *Daniel v. Life Ins. Co. of Virginia* (Tex. Civ. App.), 102 S. W. 2d 256 (1937) ; *State v. Equitable Life Assur. Soc.*, 68 N. D. 641, 282 N. W. 411 (1938) ; *State, ex rel. Equitable Life, v. Ham*, 54 Wyo. 148, 88 P. 2d 484 (1939). The decisions support plaintiff's contention. It is, however, conceded the decisions are not in harmony, and that defendant has cited contrary authority. (*Mutual Benefit Life Ins. Co. v. Commonwealth*, 227 Mass. 63 [1917] ; *Northwestern Mut. L. Ins. Co. v. Murphy*, 223 Iowa 333 [1937] ; *New York Life Ins. Co. v. Sullivan*, 89 N. H. 21 [1937] ; *State v. New York Life Ins. Co.*, [Ark.] 131 S. W. 2d 639 [1939] ; *State v. Mutual Life Ins. Co. of New York*, [Miss.] 196 So. 796 [1940].) In the mind of the author of the instant opinion it is highly doubtful whether the Massachusetts case can be regarded as authority for defendant's contention. The court in that case clearly recognized that an annuity contract, strictly speaking, is not a contract of life insurance, but that court felt obliged to hold considerations received for annuity contracts were taxable by reason of its own statutory definition of life insurance companies, which included companies engaged in the sale of annuities, and another statute which provided for a tax on all associations which engaged in the business of life insurance, and required a tax to be paid by such associations upon the net value of *all policies* in force on a certain date.

Plaintiff insists the Iowa and New Hampshire cases, *supra,* are not in point, and have been clearly distinguished in both the North Dakota and Wyoming cases, *supra,* by reason of the fact the statutes in Iowa and New Hampshire provided for the payment of a tax on all premiums received *for business done in the state.* It is true, the

Iowa and New Hampshire cases have been so distinguished in both the North Dakota and Wyoming opinions.

Plaintiff insists the decision in the Mississippi case, *supra,* is not sound and should not be followed. It points out the majority opinion in that case made no attempt to disclose any fallacy in the reasoning of the Pennsylvania, New York, Texas, North Dakota and Wyoming cases, but ignored them and based its decision upon cases now relied upon by defendant, including the Massachusetts, Iowa and New Hampshire cases, which last three cases are not in point. Plaintiff also insists the Mississippi decision was directly contrary to a long operative interpretation of the statute by the commissioner of insurance of that state as disclosed by the dissenting opinion in that case, and that the only method by which the majority reached its conclusion in that case was by arbitrarily stating the intent of the statute was free from doubt.

Plaintiff vigorously criticizes the majority opinion in the Arkansas case, and urges it was based upon a wrong interpretation of a discussion of the subject of annuities as contained in the 1935 edition of Professor Huebner's book on "Life Insurance," for the reason the decision was based almost entirely, if not completely, upon one isolated statement therefrom contained at page 154. Plaintiff insists that Prof. Solomon S. Huebner, as a witness in a similar case now pending in the supreme court of Missouri (case No. 35,701), completely repudiated the interpretation of his text by the Arkansas court to the effect that annuity contracts are simply another means of insurance, and that in the Missouri case he stated they were not to be construed as life insurance as that term is ordinarily understood, but were in fact the opposite. From the record in our case it is doubtful whether the testimony of Professor Huebner in the Missouri case properly could be considered if objection was made thereto. Since defendant, however, says he is happy the testimony has been included in the record, we shall consider it for whatever light it may throw upon the subject. The substance of his testimony in the Missouri case, if correctly understood by the author of the instant opinion, concerning the particular page of his text (p. 154) which was quoted in the Arkansas opinion, is that he was there attempting to differentiate between annuities, the economic function of which is the liquidation of a sum of money and life insurance, the economic function of which is the creation of a sum of money. Touching the portion of his text quoted in the Arkansas opinion, he testified he

there had in mind the economic rather than the contractual aspects of the subject. The gist of his testimony in the Missouri case was as follows:

"Q. Will you look at pages 154 and 155 of the 1935 edition and state whether, in your opinion, what you have there said is or is not consistent with what you have just testified to, and give your reasons therefor?

. . . . . . . . . . . . . .

"A. I don't see there is any inconsistency. At the very beginning of the chapter, which starts off on page 154, it points out clearly the distinction between contracts of life insurance and contracts known as annuities. I state in the very first sentence that life insurance has as its principal mission the creation of an estate. The annuity, on the contrary, has as its basic function the systematic liquidation of that which has been created, either along life insurance or nonlife insurance lines. So I feel that I have pointed out that the two are very different in their character; in fact, are the reverse, and that an annuity is not to be construed as life insurance, as that expression is commonly understood. I reiterate the same idea in other places in the chapter. In fact, that is the main point I try to make in the chapter—is the opposite nature of the two types of contracts."

In fairness it should be stated there is other expert testimony in the instant case supporting the above testimony of Professor Huebner, and there is likewise contrary expert testimony.

Plaintiff earnestly urges the operative interpretation of G. S. 1935, 40-252, by defendant prior to 1936 had been entirely contrary to the contention he now asserts. The parties have devoted many pages to a rather heated discussion of that subject. A review of the record has caused the court to conclude the evidence is not sufficiently clear to support a satisfactory conclusion with respect to that subject.

Touching the general character of the particular annuity contracts involved, the parties have stipulated as follows:

"The plaintiff life insurance company writes and issues in Kansas what are commonly known as 'annuity contracts,' which are of the three following classes, to wit: (1) Immediate life annuities; (2) deferred life annuities; and (3) survivorship annuities; but writes no other form of annuities of any kind or character.

"The annuity contracts involved in this case are of the first two classes only, to wit:

"1. The *immediate life annuity contract* provides that the life insurance company will pay a specified periodical income to the annuitant commencing immediately and continuing as long as the annuitant shall live, in consideration of the prior payment of a single sum.

"2. The *deferred annuity* contract provides that the life insurance company will pay a specified periodical income to the annuitant, commencing after the lapse of a specified time, if the annuitant be then living, and continuing as

long as he shall live thereafter, in consideration of the payment either of a specified sum at the issuance of the contract or periodical installments during the period of the deferment.

"The plaintiff life insurance company also issues in Kansas survivorship annuity contracts. These, however, are not involved in this lawsuit.

"*Survivorship annuity* contracts are admitted to be in effect indemnities, and in effect life insurance policies. The plaintiff life insurance company has uniformly paid the tax on this type of business.

"In all three classes of these annuity contracts the income payments may be made contingent upon the continuance of a single life, two or more lives jointly, or any survivor of a group of lives. All three classes of these annuity contracts may be issued with certain minimum guarantees, the purpose of which is to enable the annuitant to avoid complete or excessive loss or forfeiture of his invested capital due to premature death or discontinuance. These minimum guarantees may take the form of (1) (in the case of deferred annuities) a return of all accumulated installments or considerations paid by the annuitant in the event of his death or discontinuance during the deferred period (but a surrender charge may be exacted in the first few years in case of discontinuance); (2) a return of the difference between the total consideration paid by the annuitant and the total of such amounts of annuity payments as he may have received, in the event of his death before his total consideration shall have been returned; and (3) pay a periodical income during the first specified part of the term of the contract, noncontingent upon the continued life of the annuitant, technically known as an annuity certain. For example, the contract may provide that the income payments to begin immediately, will be made annually for the first ten years, whether or not the annuitant survives that period, but, if he does survive that period, they will be made to him thereafter as long as he shall live; if he should die during the ten-year period, the payments are made to his estate or beneficiary.

"It is further stipulated and agreed by and between the parties hereto that this stipulation shall not be in lieu of the evidence submitted in this case but shall be supplemental thereto."

Defendant's contentions in substance may be summarized as follows: (1) Classes of contracts numbered one and two in the foregoing stipulation constitute *life* insurance contracts; (2) the plaintiff company has recognized these contracts as contracts of insurance and the considerations received therefor as premiums; (3) it was the intention of the lawmakers the word "premiums" should embrace considerations received for insurance contracts of every kind and character, including annuity contracts; (4) the tax required by G. S. 1935, 40-252, is an exaction for the privilege of transacting business in this state.

In view of the evidence, in the instant case, of expert witnesses in the insurance business and excerpts from textbooks on the subjects of insurance and annuities, it could result only in confusion to at-

tempt to distinguish and define life insurance contracts and annuity contracts and to attempt to make an accurate application of such definitions to the instant contracts. The reason for this statement is obvious in view of the record before us. The evidence of insurance experts as to whether the instant annuity contracts constitute insurance contracts or *life* insurance contracts is in hopeless conflict. Where such a conflict exists in the conception of experts, it is difficult, if not impossible, for courts which are not experts in these fields to intelligently resolve the conflict. The oral testimony touching the question whether "considerations for annuity contracts," properly speaking constitute "premiums," is likewise conflicting.

Defendant emphasizes the fact that most of the instant contracts employed the word "premium" on the cover page of the contract as well as in the body of the contract. Plaintiff concedes that fact but points out that it is incorporated under the laws of New York, that its contracts employed the word "premium," and that considerations received by it for such "annuity contracts" were held nontaxable in the state of its domicile prior to the enactment of our statute in 1927 and under a statute practically identical with our own (*People v. Knapp*, 193 App. Div. 413, 184 N. Y. S. 345.) It reminds us that the states of North Dakota and Wyoming, subsequent to 1927, held likewise under practically identical statutes and on contracts which likewise employed the word "premium" instead of the words "consideration for annuity contracts." (*State v. Equitable Life Assur. Soc.* [1938] and *State, ex rel. Equitable Life Ins. Co., v. Ham* [1939], both *supra.*) Plaintiff also directs attention to the Pennsylvania decision, rendered prior to the enactment of our statute, and to a later Texas decision in which it was held that considerations for annuity contracts, such as the instant ones and under statutes essentially the same as ours, were nontaxable. (*Commonwealth v. Metropolitan L. Ins. Co.*, [1916] and *Daniel v. Life Ins. Co. of Virginia* [Tex. Civ. App. 1937], both *supra.*)

Defendant directs our attention to the fact the charter of the plaintiff company provides: "The business of this company shall be the making of any of the following kinds of insurance: (1) upon the lives or the health of persons and every insurance appertaining thereto, and to grant, purchase or dispose of annuities, . . ." Defendant argues the foregoing is an acknowledgment by plaintiff that all annuity contracts constitute insurance. Plaintiff urges the contention is entirely too broad and unwarranted. Plaintiff asserts that

in this charter provision it simply followed the language of the statute as to the kinds of business in which it might engage as an insurance company. It insists this court in *Wellman v. Jewell County Comm'rs*, 122 Kan. 229, 252 Pac. 193, insurance experts, and courts generally have at least recognized the fact that every annuity contract is not an insurance contract. Plaintiff insists the words in the above quotation from the charter and G. S. 1935, 40-252, to wit: *"Every insurance appertaining thereto,"* clearly disclose the lawmakers took particular pains to distinguish between every kind and character of insurance on the lives or the health of persons and the business of dealing in annuities, and that the above-quoted words have been so construed in determining legislative intent. (*People v. Knapp; Commonwealth v. Metropolitan L. Ins. Co.; State v. Equitable L. Assur, Soc.; State, ex rel. Equitable Life Ins. Co., v. Ham,* all *supra.*)

Defendant directs attention to the definition of an insurance company as contained in G. S. 1935, 40-201.

". . . . 'insurance company' shall, . . . apply to all corporations . . . writing contracts of insurance, indemnity or suretyship *upon any type of risk or loss:"* (Emphasis supplied.)

He contends the instant contracts involve a risk or loss and hence are contracts of life insurance. (*Endowment and Benevolent Association v. The State,* 35 Kan. 253, 10 Pac. 872; *Briggs v. McCullough,* 36 Cal. 542.)

Defendant emphasizes the italicized portion of G. S. 1935, 40-401, contained in its proviso clause and asserts that language is indicative of the legislative intent to regard annuities as insurance. It reads:

"Any ten or more persons, a majority of whom are citizens of this state, may associate in accordance with the provisions of this code and form an incorporated company, upon either the stock or mutual plan, to make insurance upon the lives of persons and every insurance appertaining thereto or connected therewith, and to grant, purchase or dispose of annuities: *Provided,* That such companies may incorporate in their policies provisions for the waiver of premiums or for the granting *of an annuity to the insured,* . . ." (Emphasis supplied.)

Plaintiff, as heretofore stated, asserts the first part of this section has been construed by the decisions upon which it relies as constituting a legislative distinction between insurance business and the business of dealing in annuities.

Defendant stresses the italicized portion of G. S. 1935, 40-409, the pertinent portion of which section reads:

"Every life insurance company transacting business in this state shall annually file with the commissioner of insurance a certified valuation of its policies in force . . . *Provided, however,* That the legal minimum standard for the valuation of *life insurance contracts* hereafter issued, shall be the one-year preliminary term method of valuation, except as hereinafter modified, on the basis of the American Experience Table of Mortality with interest at four percentum per annum . . . The legal minimum standard for the valuation of annuities shall be McClintock's 'Table of Mortality among Annuitants,' with interest at four percentum per annum, but annuities deferred ten or more years and written in connection with life insurance shall be valued *on the same basis as that used in computing the consideration or premiums therefor,* or upon any higher standard at the option of the company: . . ." (Emphasis supplied.)

He contends the above section indicates the lawmakers employed the term "premium" as synonymous with "consideration" for annuity contracts.

Plaintiff asserts this section further fortifies its contention that insurance and annuity contracts were intentionally distinguished by the lawmakers as separate and distinct lines of business with a separate and distinct method prescribed for their valuation, and that the section discloses the words "consideration" and "premium" were used synonymously by the lawmakers only when an annuity contract is deferred ten or more years *and* is written in connection with life insurance.

Defendant also stresses the italicized provisions of G. S. 1935, 40-420, which reads:

"From and after the first day of January, 1928, no life insurance company authorized to transact the business of insurance in this state shall issue or deliver in this state *any policy of life insurance other than industrial insurance, annuities and pure endowments with or without return of premiums or of premiums and interest unless the same shall contain in substance the following provisions:* . . ." (Emphasis supplied.)

He contends the language of this section indicates the legislature intended annuity contracts should constitute simply another form of life insurance. Plaintiff contends the section indicates the word "premium" was applied only to insurance. In any event it insists all annuities are not *life* insurance nor even insurance and that statutes identical with G. S. 1935, 40-401, previously quoted, have been definitely construed as constituting separate lines of business.

Defendant urges G. S. 1935, 40-252, requires every insurance com-

pany doing business in this state to pay fees and taxes. Plaintiff contends the statute cannot be so construed for the reason the statute does not so read, but provides for the payment of the "fees and taxes *specified* in the following schedule" and that only premiums are specified. Plaintiff reasons that subdivision B of that statute indicates the word "premium" was applied to insurance and that subdivision C thereof required an annual statement covering only premiums and that the annual statement forms provided by defendant made no provision for separate reports on "considerations for annuity contracts." Defendant counters by saying no separate report was required as the term "premium" embraced "considerations for annuity contracts," and he assumed the latter were included under the former.

In any event. defendant asserts this court in *Pacific Mutual Ins. Co. v. Hobbs*, 152 Kan. 230, 103 P. 2d 854, held G. S. 1935, 40-252, required foreign insurance companies doing business in this state to pay a tax on the gross premiums received by them for business done in this state during the preceding year and that such tax was exacted for the privilege of doing business in the state. Plaintiff concedes we so held as to "premiums" for insurance but that the decision is not controlling or helpful here for the reason no issue was there raised or decided touching types or kinds of income nor whether "considerations for annuity contracts," were included in the word "premium."

Both parties also rely upon the legislative history of various statutes in support of their contentions. While such history contains some basis of support for the respective views, it is not clear a review of that subject would be particularly helpful.

Plaintiff finally insists that in view of the conflicting testimony with respect to whether the instant contracts constitute insurance contracts, it cannot be said it is clear they are insurance contracts. It contends that in view of the conflicting testimony it cannot be said it is clear that "considerations received for annuity contracts" are "premiums," nor that it is clear the lawmakers intended by the word "premum" in G. S. 1935, 40-252, to include "considerations for annuity contracts." It contends provisions of taxing statutes will not be extended by implication beyond the clear import of the language used, and their operation will not be enlarged so as to embrace matters not specifically embraced. (*Gould v. Gould*, 245 U. S. 151, 62 L. Ed. 211; *Miller v. Standard Nut. Margarine Co.*, 284 U. S.

498, 508, 76 L. Ed. 422; *White v. Aronson*, 302 U. S. 16, 82 L. Ed. 20; *Hassett v. Welch*, 303 U. S. 303, 314, 82 L. Ed. 858.) And that where there is a reasonable doubt as to the meaning of a taxing act it will be construed most favorable to the taxpayer. (*Russell v. Cogswell*, 151 Kan. 793, 798, 101 P. 2d 361.) See, also, annuity contract cases previously cited by plaintiff.

The court is not unmindful of the well-established principles relied upon by plaintiff with respect to the construction of taxing statutes. It also has in mind the equally well-established principle that the rule of strict construction should be applied with due regard to the intention of the legislature as expressed in statutes with a view to carrying out their purpose and intent. (59 C. J. 1131-1133.) In order to ascertain that purpose and intent the provisions of tax laws, like those of other statutes, must be given a reasonable construction. (2 Cooley on Taxation, 4th ed., p. 1130.) These fundamental principles are well understood. The only difficulty arises ·with respect to their application.

This is an original action in this court and it is our duty and responsibility to find the facts. A majority of this court has concluded there is sufficient evidence to support the conclusion the instant contracts are contracts of insurance. The real question, however, is, What did the lawmakers intend by the use of the word "premium"? If they intended thereby to include "considerations received for annuity contracts," then it becomes immaterial whether the instant contracts constitute insurance contracts or annuity contracts. In the opinion of a majority of this court it is clear the lawmakers intended the word "premium" should include "considerations for annuity contracts." In view of this conclusion, it is unnecessary to prolong the opinion.

The court prefers to leave the matter of the amount of taxes plaintiff is required to pay to a separate action, and the court will retain jurisdiction of the case for that purpose. The parties have stipulated plaintiff could continue to do business in this state until the issues raised have been determined, and that stipulation is hereby ordered to stand until the question of the amount of taxes plaintiff will be required to pay has been determined. In other respects the writ will be denied. It is so ordered.

. The following are the insurance companies to which reference is

made in the opinion as having stipulated to abide by the decision in the instant case:

Aetna Life Insurance Company
American United Life Insurance Company
The Columbian National Life Insurance Company
Connecticut General Life Insurance Company
The Connecticut Mutual Life Insurance Company
The Fidelity Mutual Life Insurance Company
The Guardian Life Insurance Company of America
Home Life Insurance Company
John Hancock Mutual Life Insurance Company
The Lincoln National Life Insurance Company
Massachusetts Mutual Life Insurance Company
Metropolitan Life Insurance Company
The Minnesota Mutual Life Insurance Company
The Mutual Benefit Life Insurance Company
The Mutual Life Insurance Company of New York
National Life Insurance Company
New England Mutual Life Insurance Company
New York Life Insurance Company
The Northwestern Mutual Life Insurance Company
The Penn Mutual Life Insurance Company
Phoenix Mutual Life Insurance Company
Provident Mutual Life Insurance Company of Philadelphia
The Prudential Insurance Company of America
State Mutual Life Assurance Company
The Travelers Insurance Company
The Union Central Life Insurance Company

WEDELL, J. (dissenting): I shall endeavor to state my views rather briefly.

I concur in the statement of law contained in syllabus 1 and the corresponding portion of the opinion. After careful consideration of all aspects of this case, I cannot escape the conclusion that taking the most charitable view of defendant's contention, the right to exact the tax remains in grave doubt, if in fact defendant's contention is not entirely unsound. It is, therefore, my view that the statement of law contained in syllabus 1 controls the instant case. I concur in the correctness of the general statement of law as contained in syllabus 2. I dissent, however, from the application made of sylla-

bus 2 for the reason the language employed in G. S. 1935, 40-252, and other pertinent statutes does not justify the conclusion that it was the legislative intent and purpose to require the payment of the tax in question as a prerequisite for the privilege of transacting every kind of business by insurance companies in this state. The statute expressly provides otherwise. It requires only the payment of fees and taxes *"specified in the following schedule."* The schedule specifies only fees and taxes on "premiums." This is not a case in which an exemption from taxation is claimed and which exemption the taxpayer must clearly show he is entitled to receive. Here the question is whether a tax on "considerations for annuity contracts," is within the purview of the statute. If a reasonable doubt exists with respect to that question, the doubt must be resolved in favor of the taxpayer. (See authorities cited in majority opinion.)

I dissent from syllabus 3, first, for the reason the "annuity contracts" are not insurance, and second, "considerations for annuity contracts" are not premiums in the ordinary meaning of the word "premiums"; and, third, if the lawmakers intended to include "considerations for annuity contracts," under the term "premium," such intent is not clear and the tax cannot be exacted.

Defendant refused to issue a certificate to plaintiff for authority to do business in this state for the year beginning May 1, 1939, unless plaintiff first paid taxes in the sum of $126,876.23 on "considerations for annuity contracts" it had received in this state since 1927. No such tax had been demanded of plaintiff by defendant under G. S. 1935, 40-252, the statute in question, prior to May 25, 1936. Plaintiff is a New York corporation. In that state and under a statute essentially the same as ours, it was held, prior to 1927, that "considerations for annuity contracts" were not taxable as "premiums" even though the contracts employed the word "premium." (*People v. Knapp*, 193 App. Div. 413, 184 N. Y. S. 345, affirmed in 231 N. Y. 630, 132 N. E. 916.) To the same effect are *State v. Equitable Life Assur. Soc.*, 68 N. D. 641, 282 N. W. 411 (1938); *State, ex rel. Equitable Life, v. Ham*, 65 Wyo. 148, 88 P. 2d 484 (1939). Of course, the nature of a thing must be determined by what it is and not by what it is called. If that were not true plaintiff could easily evade the tax on "premiums" for life insurance by simply using some other name to denote premiums. Plaintiff made its annual report of business transacted in this state on forms prepared by defendant. The forms contained no place for a report of

"considerations received for annuity contracts," and plaintiff did not report them until requested to do so by defendant.

I do not deem it necessary to review the various contentions of the parties touching the alleged operative interpretation of the statute by the defendant commissioner. It is my personal view that defendant prior to 1936 probably did not believe the statute covered a tax on "consideration for annuity contracts." Defendant is not to be censored for that view. In my opinion it was correct. All decisions at that time, including a decision from the state of plaintiff's domicile, supported the view that such considerations were not taxable under a statute practically identical with our own. (*People v. Knapp*, 184 N. Y. S. 345; *Commonwealth v. Metropolitan Life Ins. Co.*, 254 Pa. 510.) Nor is defendant to be criticized for having the question at issue determined now. That is the duty of every public officer when in doubt. I may say, however, the contention that it was presumed plaintiff, prior to 1936, had been paying a tax on "considerations for annuity contracts," does not impress me as being the actual reason for failure to make a demand on plaintiff for such tax payments prior to 1936. Such a presumption is not in keeping with the careful and efficient manner in which other business affairs of the commissioner's office, which have come to my attention, have been transacted. The fact, however, remains and is conceded that no demand for such a tax was made on plaintiff prior to 1936.

It is not my position that the state could not or should not exact a tax from insurance companies for the business in question. That decision rests solely in the province of the lawmakers. My position is, first, that they did not intend to exact the tax and did not do so; second, if they intended to do so, they have not done it in a manner reasonably free from doubt. Since it is not clear the tax was intended, the doubt must be resolved in favor of the taxpayer. (See cases cited in the majority opinion.)

Nothing could be clearer, it seems to me, than the fact that the lawmakers themselves deliberately and clearly distinguished in G. S. 1935, 17-202, and G. S. 1935, 40-401, between life insurance business and annuity business. In the latter statute pertaining expressly to insurance companies, they definitely provided companies could "make insurance upon the lives of persons and *every insurance appertaining thereto or connected therewith,* and to grant, purchase or dispose of annuities." This language seems too clear to require ex-

position. If the lawmakers had thought that dealing in annuities constituted life insurance business it would have been wholly unnecessary to add after the above italicized portion of the statute the additional words *"and to grant, purchase or dispose of annuities."* (*People v. Knapp*, supra; *Commonwealth v. Metropolitan Life Ins. Co.*, supra.)

The instant contracts are either life insurance contracts or annuity contracts. It is not contended they are some other kind of insurance. Here, again, the testimony of insurance experts is in hopeless conflict as to whether the instant contracts constitute life insurance or annuity contracts. The result again is in doubt insofar as the oral testimony of the experts is concerned. While the contracts involve some of the characteristics of life insurance, they are essentially not life insurance but annuity contracts. They are not, properly speaking, indemnities for death, but investments for life. They are not intended to create an estate at the death of the annuitant, but constitute essentially an investment to be liquidated, substantially, if not entirely, during the life of the annuitant. They are designed as safeguards against misfortune and want during the life of the annuitant. In short, as has been well stated, they are essentially provisions for life and not provisions for death. (*Commonwealth v. Metropolitan Life Ins. Co.*, 254 Pa. 510, 514-515; *People v. Knapp*, 193 App. Div. 413, N. Y. S. 345; *State v. Equitable Life Assur. Soc.*, 68 N. D. 641, 651; *State, ex rel. Equitable Life, v. Ham*, 54 Wyo. 148, 154-159; *Daniel v. Life Ins. Co.*, [Tex. Civ. App.] 102 S. W. 2d 256, 257-259; *Carroll v. Equitable Life Assur. Soc. of the United States*, 9 F. Supp. 223, 224; 3 C. J. S., Annuities, pp. 1375, 1376.)

Such investment of capital, whether in the sum of $5,000, $25,000, $50,000, $100,000, or any other amount, is not a *premium* in the ordinary or proper acceptation of that term. (See last above cited cases.)

The questions whether annuity contracts similar to the instant ones constitute insurance contracts or annuity contracts, and whether the considerations received for annuity contracts constitute premiums, have received exhaustive consideration and discussion in the opinions last above cited, and I do not deem it necessary to repeat or extend at length what is there said upon those subjects. A statement from the Texas case, supra, conforms to the majority view and, in my opinion, correctly summarizes that view. It reads:

"From a careful examination of the authorities upon the subject, it is quite manifest that in general parlance insurance does not include contracts of annuity. This has been the invariable holding wherever the subject has reached the courts for decision. . . . We are not here concerned with annuities created by deed or will, which are of ancient origin. The granting of annuities by corporations upon consideration paid is a more recent practice. It appears to have been engaged in first by insurance companies, to which it is largely confined at the present day. *It is essentially a form of investment, and uniformly held to be purely such, regardless of the fact that in its usual form payments are contingent upon continuity of the life of the grantee.* In some forms of annuity, not even this contingency exists. *The fact of the existence of such contingency is held not to bring it within the classification of insurance, which, generally speaking, is indemnity for loss suffered from some risk.* In a broad and general sense investment may be said to have the same objective. The uncertainties arising from a constantly changing business and economic world involve an infinite variety of risks, security or insurance for which men constantly seek through investment of various kinds. But this is not the character of insurance or risk which is cannoted in the business of writing insurance policies. The terms have a more narrow and restricted meaning. For many years there has been an ever-growing tendency of life insurance companies to encroach upon the field of investment by loading their policies with an increasing variety of purely investment features. This fact, however, does not affect the character of a contract made by an insurance company as to whether it is insurance *vel non,* nor does it broaden the definition to include as insurance that which is not in fact properly so classified." (pp. 257, 260.)  (Emphasis supplied.)

And the court, holding that considerations for annuities are not premiums, further stated:

"This is especially true in view of the general rule that statutes creating taxes are strictly construed, and not extended 'by implication beyond the clear import of the language used.' 'Such laws are to be interpreted liberally in favor of the taxpayer.' " (p. 261.)

I concur in the decisions from New York, Pennsylvania, North Dakota, Wyoming, Texas, the federal court decision, all *supra,* and in the dissenting opinions in the Mississippi and Arkansas cases. The decisions from Massachusetts, Iowa and New Hampshire, relied upon by defendant, clearly are not in point. The decisions in the last three states were compelled by statutes dissimilar to our own. I cannot concur in the Mississippi and Arkansas cases, relied upon by defendant, and cited in our majority opinion. None of the decisions following the majority view were noted in the Mississippi majority opinion. The interpretation by the Arkansas court of that portion of Prof. Solomon S. Huebner's treatise on "Life Insurance" which forms the basis of the Arkansas decision has been repudiated

by Professor Huebner and that decision naturally is weakened, if not destroyed, by his subsequent interpretation of his own book.

Plaintiff directs our attention to the fact that if the tax demanded by defendant is required to be paid, Kansas insurance companies dealing in annuities in other states under statutes similar to our own, will also be required, on the basis of reciprocity, to pay enormous back taxes on their annuity business in such states. That is a subject of interest but, of course, is not directly involved in the instant case.

Plaintiff states it has no reserve fund in its annuity business out of which to pay the taxes demanded, and that it would be required to pay the same out of its reserve insurance fund, with the result that it would affect the dividends paid on life insurance policies. In view of the fact the court has determined to retain jurisdiction of the instant case for the purpose of determining the amount of back taxes plaintiff shall be required to pay, it is unnecessary to consider that contention now.

There are other points of interest stressed by defendant, such as the fact that some insurance companies paid the tax on considerations received for annuity contracts sold in this state. That circumstance does not alter the fact that no demand for such payment was made on this plaintiff prior to May, 1936, nor does it determine the correct interpretation of the statute any more than the fact that plaintiff and numerous other insurance companies did not pay the tax.

If the legislature, in the exercise of its wisdom, desires to tax annuity investments in the same manner as premiums for insurance it may easily do so in plain and simple language. As long, however, as the question of legislative intent is not free from reasonable doubt, the uncertainty must, under well-established principles, be resolved in favor of the taxpayer. I think the writ should be allowed.

SMITH and HOCH, JJ., join in the foregoing dissent.