No. 34,462

THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, *Plaintiff,* v. CHARLES F. HOBBS, as Commissioner of Insurance of the State of Kansas, *Defendant.*

(127 P. 2d 477)

Opinion filed July 11, 1942.

*George M. Brewster,* of Topeka, argued the cause, and *J. L. Hunt, Lester M. Goodell, Margaret McGurnaghan* and *John H. Hunt,* all of Topeka, were on the briefs for the plaintiff.

*C. Glenn Morris,* of Topeka, argued the cause, and *Jay S. Parker,* attorney general, *Eldon Wallingford,* assistant attorney general, and *Warren W. Shaw,* of Topeka, were on the briefs for the defendant.

The opinion of the court was delivered by

THIELE, J.: Heretofore this court had before it for consideration the liability of the plaintiff company, and others covered by stipulation, for the payment of a tax upon "considerations received for annuity contracts" under G. S. 1935, 40-252, it being held generally that such "considerations" were taxable. See *Equitable Life Assurance Society v. Hobbs,* 154 Kan. 1, 114 P. 2d 871. In the opinion then filed, the court made no findings or conclusions as to the amount of taxes due, it being there said:

"The court prefers to leave the matter of the amount of taxes plaintiff is required to pay to a separate action, and the court will retain jurisdiction of the case for that purpose." (p. 13.)

In what is hereafter said the words "tax" or "taxes" refer to the tax on the annuity contracts mentioned and for which the companies shall be liable under G. S. 1935, 40-252, which became effective in June, 1927.

For the years 1927 to 1934, both inclusive, the companies made returns during the following years and the commissioner of insurance assessed a tax (not here involved) which was paid. In 1936 the question arose concerning the tax upon annuity considerations, and, on May 25, 1936, the commissioner, acting upon information furnished by the companies on his demand, determined amounts which it was claimed were due for the several years mentioned for the tax here involved. For each succeeding year, the amount was determined as the annual reports and returns were made.

After our decision above noted was filed, the companies and the commissioner of insurance could not agree as to the amount of taxes due or the formula for computation, and the plaintiff then filed its

application for an order adjudicating a definite basis of tax liability and proposing a basis. The commissioner of insurance filed his motion, answer and application, in which he moved the court to strike plaintiff's application for the alleged reason the matter was settled by a stipulation entered into and filed before trial of the action, objected to the basis proposed by plaintiff, and proposed the companies were liable for each and every year involved with interest on the amounts allegedly due from 1927 to 1935 from date of the demand made on May 25, 1936, etc.

We have given consideration to the commissioner's contention the matter was settled by the stipulation mentioned. No purpose will be served by setting forth the provisions of the stipulation, nor stating reasons. We have concluded the contention is not good and cannot be sustained.

In substance three questions are involved. Are the companies liable for taxes on annuity considerations for the years 1927 to 1934, both inclusive, no tax having been assessed and no demand having been made until May, 1936? Are the companies liable for interest after tax was assessed? Are the companies entitled to deduct from premiums paid during a particular year any refunds of the consideration paid on cash refund annuity contracts?

The statute under which the tax is imposed (G. S. 1935, 40-252) provides that every insurance company doing business in this state shall pay taxes specified, and as here applicable provides that a company organized under the laws of another state shall, as a condition precedent to the issuance of the annual certificate of authority, pay a tax upon all premiums received at the rate of two percent per annum, with a proviso that in the computation of gross premiums, the company shall be entitled to deduct therefrom any premiums returned on account of cancellation, etc. The concluding portion of the section reads:

"For the purposes of insuring the collection of the tax upon premiums as set out in subsection B hereof, every insurance company or association shall at the time it files its annual statement, as required by the provisions of section 40-225, make a return, verified by affidavits of its president and secretary or other chief officers, to the commissioner of insurance, stating the amount of all premiums received by the companies in this state, whether in cash or notes, during the year ending on the thirty-first day of December next preceding. Upon the receipt of such returns the commissioner of insurance shall verify the same and assess the taxes upon such companies or associations on the basis and at the rate provided herein and such taxes shall thereupon become due and payable."

Section 40-225, referred to in the quotation above, provides that every company doing business in this state shall annually, on January 1 or within sixty days thereafter, file with the commissioner of insurance a statement of its condition as of December 31, upon a form to be furnished by the commissioner; that it shall be the duty of the commissioner to furnish the forms required for such report, and that he may at any time address any proper inquiries to any company in relation to its condition or any matter connected with its transactions, and that each company shall promptly reply in writing to such inquiries, the reply to be verified if the commissioner so requires.

Under section 40-226 every company which fails to make and file its annual return or to reply to any proper inquiry of the commissioner is subject to heavy penalties.

With respect to liability for tax for the years 1927 to 1934, both inclusive, for each of which years the assessment would be made in the following year, the companies contend generally that annual reports and returns were duly made which the commissioner annually, verified and made assessments of tax (not including that now involved), which assessments were paid; that the tax is a privilege tax and is due only upon return, verification and assessment; that the whole matter of taxation is statutory and means for collection of delinquent tax do not exist apart from statute, that there is no statute, and the commissioner in 1936 was without statutory power or authority to review reports and returns prior to those for the year 1935, and to make any further or additional assessments. The substance of the commissioner's contention is the tax is a privilege tax determinable from the reports and returns of the companies; that the returns as made did not include the considerations received for annuity contracts; that the state is not estopped by any inaction, procrastination or delay on the part of the commissioner in asserting liability for the tax; that the statute is unambiguous and places a burden on the companies to make the returns and pay the tax; that the provision of the statute, the commissioner shall verify the return and assess the tax, is directory to establish the amount due, fixes the time only when the tax is due and does not fix the obligation, and that upon its being discovered from the returns as made and as supplemented thereafter by information required by the commissioner, there had been a failure by the companies to pay in full, demand might be made for the delinquent portion.

We deem it unnecessary to discuss in detail the many questions suggested by the above contentions and to review all of the decisions and authorities mentioned in the briefs.

It may be observed here that there is no contention the companies acted in bad faith in making their returns for taxation or that such returns were made to defraud. Rather the controversy arose from construction of the statute, as our original opinion discloses.

The tax upon insurance companies under the statute is in the nature of a privilege or franchise tax. (*Pacific Mutual Life Ins. Co. v. Hobbs*, 152 Kan. 230, syl. ¶ 2, 103 P. 2d 854.)

We think it clear from the statutes above mentioned that a company doing business in this state is obligated not only to make and file its verified return for taxation, but its annual return and answers to such proper inquiries as the commissioner shall require. That these were fully made is assumed, for there is no claim to the contrary. That the information in the tax returns was verified from the above annual reports and furnished information, also seems a fair assumption, for the claimed delinquency is based on inquiries later made. After the tax return for any particular year was verified, the commissioner assessed the tax which thereupon became due and payable. Under those circumstances we think it may not be said the amount of the tax was determined by the return alone. It was determined from the return as verified by the commissioner and by his assessment. The statutes provide a method for the ascertainment and assessment of the tax annually. There is no provision of statute that permits the commissioner to resurvey returns previously made and upon which an assessment has been made and paid. It has been held repeatedly that in this state the whole matter of taxation, including levy and collection of taxes, is statutory and does not exist apart from statute. See *Sarver v. Sarver Oil Co.*, 141 Kan. 246, 248, 40 P. 2d 394, and cases cited; *Bachman-Wise Motor Co. v. Comanche County*, 143 Kan. 346, 349, 54 P. 2d 965; *State, ex rel., v. Smith*, 144 Kan. 570, 571, 61 P. 2d 897; and *Rittenoure Inv. Co. v. Birney*, 150 Kan. 684, 687, 95 P. 2d 299.

Especially in the absence of any charge of fraud or bad faith, we think that in May, 1936, the commissioner of insurance was without power or authority to reopen and review the assessments made for the years 1927 to 1934, both inclusive. The return covering 1935 was not made until in 1936, and as to it and subsequent years, there is no controversy respecting his action.

The question of interest on annual assessment of taxes will be disposed of briefly, for the principal contention thereon pertained to the years 1927 to 1934. Under the statute the tax is due and payable upon assessment being made. It is a tax in the nature of a franchise or privilege tax. The statute is silent as to the method of collection. We are of opinion that under the reasoning of *State, ex rel., v. Snell,* 127 Kan. 859, 275 Pac. 209; *Sarver v. Sarver Oil Co.,* supra, and *City of Independence v. Hindenach,* 144 Kan. 414, 61 P. 2d 124, an action would lie as for debt, and therefore under the provisions of G. S. 1935, 41-101, the amount of taxes found due and payable would bear interest at six percent per annum from the date of assessment.

The question of the right to deduct from premiums paid during a particular year any refunds of the consideration on cash refund annuity contracts is limited to that class of contracts, and not to all contracts for annuities. In the original hearing this court held that the considerations paid for such contracts were premiums under the act above mentioned providing for the tax. If the payments made were premiums for assessing tax, the portion not retained by the company but returned to the policyholder or the person designated by him was a proper item for deduction under the reasoning and holding in *State, ex rel., v. Wilson,* 102 Kan. 752, 172 Pac. 41.

The parties are directed to make settlement consistent with the views herein expressed.

WEDELL, J. (dissenting in part and concurring in part) : My views that the consideration paid for the annuity contracts here involved do not constitute premiums, within the proper meaning of the word "premiums," have been stated heretofore in the first chapter of this litigation. (See dissenting opinion in *Equitable Life Assurance Society v. Hobbs,* 154 Kan. 1, 114 P. 2d 871.) I adhere to the views expressed in my former dissenting opinion. Since, however, the view of the majority governs the question now presented, I agree that not even under the view entertained by the majority of this court could the tax be collected for any year prior to the time it was first assessed under the provisions of G. S. 1935, 40-252.

I am authorized to say that Mr. Justice SMITH concurs in the foregoing opinion.

HOCH, J. (dissenting in part and concurring in part) : I concur in

the view that the tax became due only after assessment by the commission and that no tax can be collected for years prior thereto, and concur also in what is said concerning the collection of interest. Also, I agree that having, in the former decision in this case, classified as "premiums" all considerations received on annuity contracts, even though the full amount of the consideration is paid in one lump sum upon execution of the contract, it would be wholly inconsistent not to classify as "premiums" the returned portions of such considerations in determining the right to refund under the statute. But I adhere to the views expressed in the dissenting opinion of Mr. Justice Wedell, in which I joined, in the former case, that such considerations are not properly classified as premiums.